## M. P. PEGRAM v. THE WESTERN UNION TELEGRAPH CO.

### Telegraph Companies—Negligence.

1. An act which under some circumstances would be simply negligent, under other circumstances would be grossly negligent.

2. A telegraph company may limit its liability from ordinary negligence in sending unrepeated messages to the amount paid for the transmission of the message, but it cannot exempt itself where there has been gross negligence.

3. What would be ordinary negligence in sending a message apparently of small consequence, might be gross negligence where it was manifest that the message was important.

4. A party sending a telegram is charged with notice of the printed contract at the top of the message, whether he has read it or not.

5. The failure by a telegraph company to employ careful and skillful operators is gross negligence.

(*Lassiter* v. *The Telegraph Co.*, 89 N. C., 336; distinguished).

This was a CIVIL ACTION, tried before *Montgomery, Judge,* at November Special Term, 1886, of the Superior Court of MECKLENBURG County.

The defendant is a duly incorporated company, whose business it is to transmit messages over its lines for pay.

The plaintiff was engaged in the city of Charlotte, in the business of buying and selling railroad and other stocks for profit, and one Wm. C. Sedden was engaged in similar business, under the firm name of Wm. C. Sedden & Co., in the city of Richmond, Virginia. On the 14th day of February, 1881, the plaintiff delivered to the defendant, at its office in Charlotte, for transmission over its line to the said W. C. Sedden, in Richmond, a message in the following words:

"Party offers one hundred shares C. C. & A., at forty-three. Answer quick."

The charges for said message were paid, and the defendant company undertook and contracted, in consideration thereof, to transmit it. In response to the telegram so sent to the said Sedden, he caused to be transmitted to the plaintiff, over the same line, on the same day, a telegram in the following words, to-wit: "Will take one hundred shares; draw at sight with stock attached, if wish."

The telegram delivered by the defendant company to W. C. Sedden at Richmond, was not the one sent by the plaintiff, but was in the following words: "Party offers one hundred shares C. C. & A. at forty. Answer quick."

The plaintiff alleges that in consequence of the offer of the stock at forty dollars per share, as stated in the telegram delivered to the said Sedden in Richmond, he immediately sold the amount of said stock in Richmond, at the price of $41.75 per share, which was then the market price of the stock in that city, but in order to deliver the same, he had to purchase other stock of the said railroad, at that price or more, and that by reason of the said error in the price, and the negligence and carelessness of the defendant, the plaintiff was compelled to pay to the said Sedden the difference between 100 shares of said stock at $40 per share, and the same stock at $41.75 per share, and other costs and damages to the amount of $250.

For a second cause of action, he alleges that the mistake in the transmission of the message, was owing to the gross and willful negligence and carelessness of the defendant, whereby the loss and damage were sustained, for the recovery of which this action is brought.

The defendant admits the receipt and transmission of the message as alleged, but says that the price charged was only sixty-two cents, being the sum charged for messages of that length not required to be repeated to prevent mistakes, and says that the plaintiff was distinctly notified that mistakes were liable to occur in the transmission of messages, and that to guard against such mistakes, it was necessary to repeat the message for comparison, and that the charge for so repeating, was an addition of one half to the regular charge; that the plaintiff was also distinctly notified that the defendant would not be liable for failure in the correct transmission and delivering of said message, unless the same was so repeated; that the plaintiff elected not to pay the additional toll or charge, but expressly agreed with the defendant, that, in consideration of its sending the message for the reduced toll, it should not be liable for any mistake or delays, or for non-delivery of such unrepeated message, whether happen-

ing by the negligence of its servants or otherwise, beyond
the amount received for sending the same, and that the
defendant contracted to transmit the message upon this agree-
ment, and that the mistake occurred in the course of trans-
mitting it over the wires and receiving it in Richmond."

The answer denies that the mistake was the result of care-
lessness or negligence, but was naturally incident to unre-
peated messages, always liable to occur, and of this the plain-
tiff had full knowledge and notice, and by his agreement ex-
empted the defendant from liability in respect thereof.

To the second cause of action, the defendant answers, de-
nying that the error or mistake was owing to the gross and
willful carelessness or negligence of the defendant or its em-
ployés, and denies liability on account of said mistake.

The plaintiff testifies, that he delivered the original mes-
sage to the defendant company; that he writes a legible
hand, and that he prepaid the charges. In two hours after
sending the message, he received a reply from Sedden & Co.
The next day he discovered the mistake, by receiving a let-
ter or message.

The plaintiff then offered to show that he did not read the
printed matter on the telegram, and did not know its con-
tents. This was objected to, and the objection sustained
and exception noted. The printed matter referred to, con-
tains limitations upon the liability of the defendant in send-
ing *unrepeated* messages, substantially as averred in its answer,
and the printed request, preceding the written part of the
message: " Send the following message, subject to the above
terms, which are agreed to."

There was a judgment for the plaintiff for the sum of
sixty-two cents—the cost of the message—and he appealed.

*Messrs. W. P. Bynum* and *Platt D. Walker,* (*Mr. A. Burwell*
was with them on the brief,) for the plaintiff.
*Mr. John Devereux, Jr.,* for the defendant.

DAVIS, J., (after stating the facts). That the limitations restricting the liabilities of telegraph companies in the transmission of unrepeated messages are reasonable and proper, and that such limitations are binding upon the sender of a message who elects to take the risk of sending it unrepeated, rather than pay the small additional cost to secure accuracy, we regard as settled by the case of *Lassiter* v. *Telegraph Co.*, 89 N. C., 336, and the authorities there cited; but, as was said in that case: "The exemption is not extended to acts or omissions involving gross negligence, but are confined to such as are incident to the service, and may occur where there is but slight attaching culpability in its officers and employés."

Negligence and gross negligence are relative terms. An act, under certain circumstances, might be simply negligent; the same act, under other circumstances, might be grossly negligent.

Undoubtedly, a carrier would be charged with greater care in handling valuable glassware than iron ware, or in transporting a package of gold than one of brass. So, what might be slight negligence in a telegraph operator in transmitting a message of small apparent importance, might be gross negligence in transmitting one of apparently great importance.

Conceding that the defendant company had a right to limit its liability, and that the plaintiff was charged with notice of the printed matter contained in the telegram sent, but that such limitation did not extend to acts of gross negligence, was there evidence of such negligence in this case? It was the duty of the defendant to employ competent operators; there was evidence tending to show that the operator at Richmond was not competent. The witness Dodge, said: "I did not consider the operator at Richmond a competent man." Dodge had been manager of the defendant's office at Charlotte, and testifies as to the method of transmit-

ting messages. He testifies that the message sent contained fourteen words, and that he sent it exactly as written. He says: " I telegraphed that I was sending fourteen words. I put fourteen words on the wires. It would be the duty of the receiving operator to answer, ' O. K,' if he received the number of words. If the message received did not contain that number of words   *   *   *   it was his duty to telegraph me that it was short. In this case, I put the telegram on the wires correctly. He telegraphed me, ' O. K,' which means that he received the words correctly. I should say the wires were all right that day, and in good working order.   *   *   *   *   I have been operating for thirty-seven years, and I think I can give an opinion as to the competency of the operator at Richmond. My opinion was that he was not a fair operator for that office." The message delivered to the operator at Charlotte contained a proposition to Sedden & Co., to sell them stock at " forty-three;" the message delivered read " forty," leaving out the word " three." The witness Dodge says: " It is possible, but hardly probable, that the word 'three.' could have been lost; but by the exercise of ordinary care, the mistake could have been avoided."

This case is clearly distinguishable from *Lassiter* v. *Telegraph Co., supra.* In that case, the mere fact of the mistake was the only evidence of negligence. The number of words sent was the number of words received. There was no evidence as to how the mistake occurred, and no evidence of carelessness or incompetency on the part of the agents of the company. Nor was there anything to indicate that the message was of special importance.

Could the mistake here have been avoided by the exercise of ordinary care? Or was it the result of gross negligence?

The only issues which his Honor allowed to be submitted were:

1st. Was the word " three " omitted by the gross negligence of the defendant or its servants?

2d. What are the plaintiff's damages, if any?

The Court instructed the jury that there was no sufficient. evidence to go to them on which they could find that there was gross negligence, and they must respond to the first. issue—No.

We think there was evidence of gross negligence, and that the Court erred in not submitting it to the jury.

The plaintiff is entitled to a new trial. Let this be cer-tified.

Error.                                                            Reversed.