# The United States Telegraph Co. *versus* Wenger.

1. A message to New York was prepaid at a telegraph office in Lancaster, whose line extended to New York; the message did not get beyond Philadelphia and no reason was given for the failure; this was gross negligence and the company incurred a contingent liability for such damage as the sender had sustained in consequence.

2. The message ordered a purchase of stock, which advanced in price between the time the message should have arrived and the time it was purchased under another order. The advance was the measure of damages.

3. The message disclosed to the agent of the company the nature of the business to which it related, and the object was buying stock as soon as received, no other time being named. The presumption was that the damages contemplated in case of failure were the advance in price of the stock.

4. The court admitted in evidence a letter from the New York correspondent and his oral statements to the witness to show the reason why the stock was not sooner purchased. *Held*, to be error.

[United States Telegraph Co. v. Wenger.]

5. Refusal to order a nonsuit is not reviewable in the Supreme Court.

6. Refusal to strike out evidence is not the subject of exception; the proper mode is to ask instruction that it be disregarded.

7. It was not error to reject evidence of defendant to show that "there was no certainty that the stocks could have been purchased at the quotation prices," if the telegram had been duly received.

May 14th 1867. Before WOODWARD, C. J., THOMPSON and AGNEW, JJ. STRONG and READ, JJ., absent.

Error to the Court of Common Pleas of *Lancaster county*.

This was an action on the case by M. G. Wenger, brought November 19th 1864, against the United States Telegraph Company.

The plaintiff employed George H. Reed, a broker, of the firm of Reed, McGrann & Co., to order for him 50 shares of North Western Railroad stock, and 50 shares of Prairie du Chien stock. He testified that he went to the office of the company to order it. The message given by him was written under printed conditions of the company, as follows :—

"Inland and American Telegraph Lines to Philadelphia, New York, &c., and all points East, West, North, South.—No. 1. Time, 9.30. Office, Patriot and Union Building, Harrisburg. Notice :—

"Every message for transmission by this company will be received only upon the following conditions, viz. :

"The company assumes no responsibility in business transacted over its line, beyond the exercise of good faith and due diligence and the amount paid for a transmission. And it assumes no responsibility for the accuracy *or despatch of messages beyond the terminus of its line*. It will make, free of charge, payments to other lines that are made to this line to cover charges *on messages required to be delivered to such other lines*. But it will not refund any such payments, *on account of any neglects or failures not occurring on this line*, beyond the sums which the line at fault shall first refund to this line.        *        *        *

"T. H. WILSON, Prest."

"October 10th 1864.

"Send the following Message—subject to the above conditions :

"To MR. J. O'BRIEN,
                "58 Wall Street, New York.

"Buy (50) Fifty North Western—Fifty (50) Prairie du Chien limit Forty-five (45).

"8 | 70 pd.                                    REED, M'GRANN & Co."

He also repeated the order by mail. Having received no answer that evening, he went to the telegraph office to inquire about the sending of his message, and was informed by the agent

that it had been sent on, and went as far as Philadelphia, where it was detained.

The stock was bought by O'Brien & Co. for the plaintiffs on the 13th of October, under the order in the letter; the price had advanced by that time, so that the stock cost $462.50 more than if the purchase had been made on the 10th.

The witness testified that he was charged for transmission to New York, and paid it; that he did not ask the operator to repeat the order back; that his letter was received in New York on the 11th.

The witness was asked to state why the stock was not purchased in pursuance of the order in the letter of the 10th of October, received by O'Brien & Co. on the 11th? This was objected to by defendant, admitted, and an exception taken.

The witness said, "The reason was, that as our letter stated we had sent a despatch by telegraph, and they received no such despatch, they concluded our letter referred to some other order, and declined to buy. This I know from their correspondence with us; and I had a conversation with Mr. O'Brien in regard to it."

A letter dated New York, October 12th 1864, from O'Brien to Reed, McGrann & Co., was offered, objected to, admitted and the defendant excepted.

The plaintiff also proved by members of the firm of O'Brien & Co. that the telegram had not been received. He then rested.

The defendant moved for a nonsuit, on the ground that there is no evidence against the United States Telegraph Company. It was admitted that the Inland and American Telegraph Company and the United States Telegraph Company had been consolidated into one company. The nonsuit was refused, and an exception taken.

D. H. Potts, the operator who received the message from Reed, testified that he was there in the employ of the United States Telegraph Company, which was the name of the company doing business at that time.

The defendants called a witness who was a banker and broker, and asked him "If the telegram had been received, at 11 o'clock that forenoon, was there any certainty that the stocks could have been purchased at those rates?" which was objected to, rejected, and an exception taken. They also asked the witness: "What is your experience as a broker in buying stock by telegram from Lancaster to New York, and when the telegram reaches its destination in due time, is there a certainty or not of buying the stock desired on that day." Also, "whether the purchase of stocks by telegraph is or is not certain."

These questions were severally overruled, and exceptions taken.

[United States Telegraph Co. v. Wenger.]

At the close of the case, the defendants asked the court to rule out, or withdraw, all the testimony of D. H. Potts, from the jury, " the same not being competent evidence, to show that the Inland Telegraph Company was consolidated with and became the United States Telegraph Company, on the 10th of October 1864. The burthen of that proof lies on the plaintiff, and the only competent evidence to show it in the face of the original telegram in evidence, and offered by defendants, are the articles of consolidation, if such exist." The request was refused.

. The defendants submitted four points :—

1. That the plaintiff could not recover more than the price paid for the despatch, and not speculative or contingent gains.

2. That the damages can be only such as may fairly have been supposed to have entered into the contemplation of the parties at the time of contracting ; and the despatch containing no intimation of its purposes, they could not have expected any loss to arise from a failure to deliver the message.

3. The delay in the purchase of the stocks subsequent to the receipt of the letter cannot be imputed to the neglect of the defendant. Therefore, if the plaintiff is entitled to recover any damages from the defendant, such damages must include only the difference between the prices of the stocks on the 10th and 11th days of October 1864.

4. The plaintiff cannot recover the differences of price of the said stocks on the 10th and 13th days of October 1864, as such a subsequent purchase at an advanced price could not fairly be supposed to have entered into the contemplation of the parties at the time of the alleged contract.

The court (Hayes, A. J.) answered the points :—

." 1. The damages claimed in this case are not speculative damages, but damages which the plaintiff alleges and has given evidence to show that he actually sustained through the defendants' neglect or failure to perform their duty—damages sustained as the direct consequence of the defendants' negligence.

" 2. The damages which may be fairly supposed to enter into the contemplation of the parties are such as might naturally be expected to follow the violation of the contract by the company or its agent. The damages which might naturally be expected to follow the violation, would be the difference in the prices for which the stocks could have been obtained, had the defendants done their duty according to the contract, and the prices for which the stocks could be purchased, at the earliest date thereafter, when the order to purchase given as soon as the party ordering could give it, after ascertaining the defendants' failure to transmit the first order. The telegraph order was sufficiently intelligible, and the plaintiff is entitled to recover damages from the delay in the purchase of the stocks ordered, for loss sustained

or gains prevented by reason of the defendants' neglect, if the jury find the loss was the result of the neglect.

" 3. The letter of the 10th of October repeated the terms of the despatch which it informed Messrs. O'Brien & Co., was directed to be forwarded, ordering the purchase, &c. But O'Brien & Co. did not receive any such despatch, and on that account (*i. e.* the defendants' failure to transmit the telegram), they believed the letter· referred to some former transaction because they received no telegram, such as the letter described, and therefore did not proceed to buy the stocks ordered until they received the second telegram on the 13th day of October. If the jury believe that the delay to buy, was occasioned by the telegram not coming to hand, this would fix the defendants with the cause of the loss, and entitle the plaintiff to damages.

" 4. The difference of prices of these stocks on the 10th and 13th of October 1864, if the jury find, according to the evidence, that the plaintiff was obliged to pay that difference in consequence of the defendant's neglect in failing to transmit his orders of the 10th of October by telegraph, as they undertook and were paid to do, is not of the nature of speculative damages, but such damages as directly and naturally followed the defendants' neglect, and which such difference of prices properly measures."

The verdict was for the plaintiff for $486.50.

The defendants removed the case to the Supreme Court, and assigned for error:—The refusal of the court below to order a non-suit; to withdraw the testimony of D. H. Potts; the several rulings as to evidence, and the answers to their points.

*D. G. Eshelman* and *G. W. Patterson*, for plaintiffs in error, cited Acts of March 11th 1836, § 7, pl. 22, Pamph. L. 78; 22d of April 1853, Pamph. L. 554; Railroad Co. *v.* Gazzam, 8 Casey 340; Sedgwick on Meas. of Dam., chap. 3, pp. 33, 98; Landberger *v.* Telegraph Co., 32 Barb. 550; Adams Express Co. *v.* Egbert, 12 Casey 360; Hadley *v.* Baxendale, 9 Excheq. 341; Prof. Dwight, N. Y., on the Law of Telegraphs and Telegrams, 4 Am. Law Reg. N. S. 203; Miller *v.* Mariners' Church, 7 Greenl. 51; Thompson *v.* Shattuck, 2 Metc. 615.

*W. R. Wilson*, for defendant in error, cited Bavington *v.* Pittsburg and Steubenville Railroad Co., 10 Casey 358; Telegraph Co. *v.* De Rutte, Am. Law Reg., May 1866, p. 418; Id. February 1865, p. 193; Story on Bailment, §§ 529, 510, 511; Verner *v.* Sweitzer, 8 Casey 208; Hayes *v.* Kennedy, 5 Wright 378; Story on Agency, § 217, c. 221; Wilson *v.* Wilson, 2 Casey 393; De Tastette *v.* Crousillat, 2 Washington C. C. 132–136; Morris *v.* Summerl, Id. 203; Park *v.* Alton Cal. Tel. Co., 13 Cal. R. 422; Bank of Montgomery *v.* Reese, 2 Casey 143; Kimmel *v.*

[United States Telegraph Co. *v.* Wenger.]

Stoner, 6 Harris 156; Hadley *v.* Baxendale, 9 Exch. R. 341; Griffin *v.* Colver, 16 New York (2 Smith) 489.

The opinion of the court was delivered, July 3d 1867, by

THOMPSON, J.—The broker of the plaintiff below, ordered the purchase of certain stocks in New York for him, by telegraph, on the 10th October, 1864, and having prepaid the charges gave the message to the defendants for transmission to his correspondents named therein. The message it appears got no further than Philadelphia, although the defendants' line extended to Portland, Maine. No such reason as the law would recognise, indeed no reason at all, was given for the failure to transmit the message to its destination. Thus, was there presented a clear case of gross negligence against the company in performing its undertaking, and a consequent liability to the plaintiff for such damage as he had sustained in consequence thereof. The stock ordered was of course not purchased on the day the despatch was given to the company to be transmitted, as it might have been, for it was not pretended it was not in the market; but three days thereafter it was procured at an aggregate advance of $462.50. This difference, the plaintiff claims, is the damage he has sustained and entitled to recover. Undoubtedly, this is the measure of damage in this case. The despatch was such as to disclose the nature of the business to which it related and that the loss might be very likely to occur if there was a want of promptitude in transmitting it containing the order. In this respect it differs much from that in Landberger *v.* The Magnetic Telegraph Co., 32 Barb. 550. "*Get ten thousand dollars of the Mail Company*," the message in that case said, but did not disclose that the money was to be gotten from the Mail Company, to save from failure a valuable contract; hence it was held, that the damages arising from that cause could not reasonably be presumed to have been in the contemplation of the parties to the contract or not recoverable to that extent. Here the object of the message was for the purpose of buying stock as soon as received; no other time being named, and it is not possible, consistently with any knowledge of the business of dealing in stocks, to fail to understand that damage might ensue, nay, would be likely to ensue, by delay. The damage from such a source was what would naturally have entered into the minds of the sender and the undertaker to send the message if they thought on the subject at all; and that they did think is true, if the witness was credible, and whose uncontradicted statement is, that he notified the operator that he would look to the company for damages if they failed in transmitting the message. The rule laid down by the learned judge as to the measure of damages was all right enough, and therefore in accordance with settled principles.

But there is one matter in which we think the court erred,

[United States Telegraph Co. *v.* Wenger.]

although it has scarcely received the attention of a passing notice by the counsel for the defendant in error, and that was the admission in evidence of the declarations of O'Brien & Co., as offered to be proved by Reid, in order to show why they did not buy the stock on the receipt of the letter from the plaintiff's agent, containing a repetition of the telegram. That was received before business hours on the morning of the 11th, but they did not act upon it, and did not buy the stock until after the receipt of a telegram on the 13th. The witness was allowed to state these reasons against the objection of the defendants. Their letter from which the witness learned these reasons was also offered and received. We cannot see upon what grounds this testimony was admissible. O'Brien & Co. were competent witnesses. In fact their testimony had been taken and used in the case as to other matters, but not on this point; it should have been taken as to this matter also. Their declarations were not *res gestæ* in regard to the contract to send the message ;—they touched a different point, viz., performance. Not being receivable on this ground, it is manifest they were not on any, and in receiving these unsworn statements, the court, in our opinion, erred. We reverse, therefore, although reluctantly, on this ground ; for it is altogether probable that sufficient reasons will be shown by these men when their testimony is taken, to account for their non-action on the receipt of the letter from the plaintiff's broker on the 11th of October 1867.

There was no error reviewable in this court, for refusing to nonsuit the plaintiffs as claimed by the defendant. And if it were reviewable, a better reason than the one assigned for it would have been required. The company's corporate existence was not in issue by the pleadings. Besides, the testimony showed beyond controversy, that the company which undertook to transmit the message was the one sued, and was the defendant in the case.

Nor was the refusal to strike out evidence, the subject of exception. The evidence being in without exception, the only mode of repairing the damage was to request the court to charge that it be disregarded. On this, as well as on the point preceding, we have several times lately declared the rule to be as now stated.

There was no error in refusing to hear testimony "that there was no certainty that the stock could have been purchased at the quotation prices, on the morning the telegram was received." Had the proposed testimony assumed the position of a fact in this particular case, it would have been evidence. It was but opinion, and did not tend to disprove the prices current sworn to, and was not evidence. There is no error in any portion of the case

[United States Telegraph Co. *v.* Wenger.]

but that indicated above; but on account of that we are constrained to reverse.

Judgment reversed, and *venire de novo* awarded.