## JAMES H. LASSITER v. WESTERN UNION TELEGRAPH CO.

*Telegrams, negligence in transmitting—Damages.*

1. A stipulation contained in a form used by a telegraph company in its business operations, to the effect that it will not be responsible for mistakes in transmitting unrepeated messages, is a reasonable one.

2. The plaintiff's cotton factor sent to plaintiff the following unrepeated message : " Can get ten and three-eighths for your cotton—answer"; and that delivered to plaintiff contained the word "fourths" instead of " eighths;" and thereupon the plaintiff at once directed a sale of the cotton ; *Held*, in an action for damages for loss alleged to have been sustained by reason of the mistake, that the plaintiff is not entitled to recover.

3. In such case, the exemption from liability does not extend to cases where there is gross negligence on the part of the company or its employees.

(Mr. Justice ASHE dissenting.)

CIVIL ACTION tried at July Special Term, 1882, of VANCE Superior Court, before *Graves, J.*

The plaintiff, himself engaged in buying and selling cotton, and having his residence and place of business at Henderson, had consigned a number of bales to J. J. Thomas, his factor and correspondent at Raleigh, with directions to keep him advised of the state of the market, intending to hold the same for an advance in price for cotton of that grade to ten and three-fourths cents per pound.

On June 3d, 1881, the consignee delivered at the defendant's agency in Raleigh, for transmission to the plaintiff, a written message in these words: " Can get ten three-eighths, basis middling, for your cotton. Answer." The message was written upon forms prepared and used by defendant company, at the head of which are printed conditions limiting the company's liability, prefaced with the sentence: "All messages taken by this company subject to the following terms," and a memorandum in large type at the foot, calling attention to the notice and agreement at the top. The condition referred to, so far as material to the present inquiry, is as follows:

LASSITER *v.* TELEGRAPH CO.

"To ward against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the originating office for comparison. For this, one half the regular rate is charged in addition. It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any unrepeated message, whether happening by the negligence of its servants, or otherwise, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery of any repeated message beyond fifty times the sum received for sending the same, unless specially insured; nor in any case for delays arising from unavoidable interruption of the working of its lines; or for errors in cipher or obscure messages."

Immediately underneath and preceding the writing are the further words: "Send the following message subject to the above terms, which are agreed to."

The message communicated to the plaintiff on the same day varied from that handed in at the sending office in substituting the word "*fourths*" in place of "*eighths*," thus representing the market value to be three-eighths in excess of what it really was and that intended to be conveyed by the sender. Thus changed, the message was transcribed, and on forms also used by the company for deliveries, with a printed notice at the top of which a marginal note on the left side in manuscript, calls attention in these words:

"This company transmits and delivers messages only on conditions limiting its liability, which have been assented to by the sender of the following message. Errors can be guarded against only by repeating a message back to the sending station for comparison, and the company will not hold itself liable for errors or delays in transmission or delivery of unrepeated messages. This is an unrepeated message, and is delivered by request of the sender under the conditions named above."

The plaintiff, on receiving the information from his factor, at

once, by telegram, directed a sale, and the cotton was sold on the next day at the price of $10\frac{1}{2}$ cents per pound, the market price having in the meantime advanced to that point. The sum paid by Thomas was for a single transmission of the communication and at the regular charge for one unrepeated. Cotton did, in a few days after the sale, advance to $10\frac{3}{4}$ cents, and the plaintiff demands as the measure of his damages the excess of this sum over that for which the cotton was sold.

It does not appear when, if at all, before bringing his action, the plaintiff expressed his dissatisfaction at the terms of sale, or made complaint of his being misled* in giving instructions to sell, by reason of the erroneous communication, at any time, to defendant or to Thomas, before the rise in market value became known to him.

The action begun before a justice of the peace, and, on appeal, retried in the superior court, was defended, and a recovery of any sum beyond that paid for the message resisted on the two-fold ground:

1. That by the express terms of the agreement for this unrepeated message, as understood between the company and both the plaintiff and his agent Thomas, this was to be and is in full compensation; and,

2. The alleged loss does not flow from the act of the defendant, as its legal cause, in any sense that renders the defendant liable for other than nominal damages, even in the absence of the stipulation between the parties.

The court ruled that the plaintiff was only entitled to recover twenty-five cents, the price paid for the transmission of the message, and gave judgment therefor, and for the costs of the action, from which the plaintiff appeals.

*Mr. W. H. Young*, for the plaintiff.
*Mr. M. V. Lanier*, for defendant.

SMITH, C. J., after stating the above. While there are cases which with great force question the right of a telegraphic com-

pany, engaged in a form of public service by rules restrictive of the liability incident to its business in conveying messages between remote points, to protect itself from the consequences of gross neglect or unnecessary and inexcusable delay in the delivery of even unrepeated messages (as in *Telegraph Co.* v. *Tyler*, 64 Ill., 168; *Dorgan* v. *Telegraph Co.*, in United States circuit court, southern district of Alabama, reported in 1 American Law Times, 406, and in other cases), as opposed to public policy and in themselves unreasonable, it is established by a great weight of authority, to which we have found but few cases in opposition, that the requirement of a repetition of a transmitted message over the wires to insure its accuracy, and as a condition underlying the company's responsibility for errors in communicating it at an enhanced cost to the sender, as the duplicate is of increased service rendered, is reasonable and proper, and its validity sustained.

The exemption is not, however, extended to acts or omissions involving gross negligence, but is confined to such as are incident to the service and may occur where there is but slight attaching culpability in its officers and employees.

Variations are not uncommon, and are deemed venial in manuscript copyings from an original, and they are much more to be looked for in case where a double translation of a communication has to be made, first into telegraphic signals or sounds and then from these restored to the original language. The electric ticks to be given at one end of the line and to be interpreted and read at the other are not articulate sounds like those of the human voice, and much more liable to be misunderstood; and, then, the individual handwriting of the sender himself and his meaning may be misunderstood. To guard against error from these and other causes to which this mode of conveying intelligence is peculiarly exposed, it is deemed but a reasonable and fair precaution to secure entire correctness that the message should be returned, so that it will be certainly known it has correctly been carried to the person to whom it is addressed, with the added

22

compensation for its transmission both ways. The cases to this effect are numerous. *Ellis* v. *Telegraph Co.*, 13 Allen, 226; *Redpath* v. *Telegraph Co.*, 112 Mass., 71; *Grinnell* v. *Telegraph Co.*, 113 Mass., 299; *Bartlett* v. *Telegraph Co.*, 62 Maine, 209; *Camps* v. *Telegraph Co.*, 1 Metc. (K. Y.), 164; *Wann* v. *Telegraph Co.*, 37 Mo., 433; *Birney* v. *Telegraph Co.*, 18 Md., 341; *Telegraph Co.* v. *Carew*, 15 Mich., 525; *Sweatland* v. *Telegraph Co.*, 27 Iowa, 432; *Bruse* v. *Telegraph Co.*, 48 N. Y., 132; *Young* v. *Telegraph Co.*, 65 N. Y., 163; *Telegraph Co.*, v. *Fenton*, 52 Ind., 1; *McAndrew* v. *Telegraph Co.*, 84 Eng. Com. Law Rep., 3.

We prefer to reproduce portions of the opinions of some of the eminent jurists, delivered in a few of the cases cited, in vindicating the principle of a limited liability, in place of comments of our own in its support.

In *McAndrew* v. *Telegraph Co.*, *supra*, where the same substantial qualifications were annexed to the sending of all unrepeated messages, and the error in the single message consisted in the substitution of Southampton for Hull, to which the ship was directed to proceed and dispose of her cargo of oranges, and in consequence of which a large loss was sustained in their sale, JERVIS, C. J., quoting the condition, "The company will not be responsible for mistakes in the transmission of unrepeated messages," says: "So far from that being, as my brother BYLES suggests, an unreasonable qualification or limitation of the company's liability, it seems to me to be perfectly just and reasonable that means should be afforded to the company of ascertaining, by repetition, the correctness of the translation of the messages delivered to them for transmission."

CROWDER, J., in the same case remarks: "The public have thus the opportunity of transmitting unimportant messages for a small charge; or, if it be a matter of importance, they may, at a moderate additional charge, have the message repeated, and so obtain a certainty almost of its being transmitted with perfect accuracy."

So WILLES, J., concurring, observes: "If a man wanted to

send a message by the telegraph, which it was important to him should be correctly transmitted, he would naturally repeat it, in order to insure its correctness. Now, the repetition of a message necessarily imposes more labor upon the party sending it, and therefore it is but reasonable that extra labor should be paid for. And it is also reasonable that the company should be paid more for taking upon themselves the risk of insuring the transmission against these accidents which are necessarily incident to a business of this sort."

In *Ellis* v. *Telegraph Co., supra,* Chief-Justice BIGELOW, after pointing out the duties of common carriers of goods and the reasons of policy on which the stringent rule of the common law applicable to them rests, proceeds:

"But the trust reposed in the owner or conductor of a line of telegraph is of a very different character. No property is committed to his hands. He has no opportunity to violate his trust by his own acts of embezzlement, or by his carelessness to suffer others, by means of larceny or fraud, to despoil his bailors of their property. Nor can it be at all times in the power of an operator, however careful or skillful he may be, to transmit with promptness or accuracy the messages committed to him. The unforeseen derangement of electrical apparatus; a breach in the line of communication at an intermediate point, not immediately accessible, occasioned by accident or by wantonness or malice; the imperfection necessarily incident to *the transmission of signs or sounds by electricity, which sometimes renders it difficult, if not impossible, to distinguish between words of the like sound or orthography, but different signification;* these and other similar causes, the effect of which the highest degree of care could not prevent, make it impracticable to guard against errors and delays in sending messages to distant points."

In the later case of *Grinnell* v. *Telegraph Co.,* decided in 1873, GRAY, C. J., and now an associate judge of the supreme court of the United States, distinguishing also between these classes of public agencies, says:

"A telegraph company is entrusted with nothing but an order or message, which is not to be carried in the form in which it is received, but is to be transmitted or repeated by electricity and·is peculiarly liable to mistake, which cannot be the subject of embezzlement; which is of no intrinsic value; the importance of which·cannot be estimated except by the sender, nor ordinarily disclosed by him, without danger of defeating his own purposes; which may be wholly valueless unless forwarded immediately; for the transmission of which there must be a simple rate of compensation, and the measure of damages for a failure to transmit or deliver which, has no relation to any value which can be put on the message itself." He concludes: "There was no offer at the trial to show any *wanton disregard of duty or gross negligence* on the part of the company or its agents. The offer to prove that there .was negligence on the part of the operator in not sending the whole message received, must be understood to mean want of ordinary care. No question, therefore, arises whether the company would be charged by reason of gross negligence, as held in *Telegraph Co.* v. *Gildersleeve*, 29 Md., 282, and suggested in *Ellis* v. *Telegraph Co.*, 13 Allen, 226, 234."

We refer, as sustaining the proposition, also to Abbott's Trial Evidence, 604, and cases cited in note to support the text.

It is unnecessary to consider any other questions which might be suggested, and as what we have said is decisive of the appeal, we forbear the expression of any opinion upon them.

There is no error, and the judgment must be affirmed.

No error.                                                    Affirmed.


Mr. Justice ASHE dissented ftom the ruling of the court.