D. F. CANNON, J. W. CANNON (and others) trading as CANNON, FETZER & WADSWORTH v. WESTERN UNION TELEGRAPH CO.

1. Plaintiff had contracted to deliver in New York 100 bales of cotton in December, and 500 in February following. On 3d November, at 9:30 A. M., he handed to defendant's agent, a telegraph operator, a message, *in cipher*, on the usual blank of the Company, directing plaintiff's agents to buy, if market was firm and advancing; and at 11:45 another, also in cipher, and on the printed blank, ordering them to buy without condition. The messages were sent by different connecting lines, the first at 11:15 A. M., and reaching New York at 1:20 P. M., and the second at 12:35 P. M., but reaching New York three minutes earlier than the other. The cotton exchange closed at 3 o'clock, and the messages, which were not repeated, were delivered an hour and a half before, but plaintiff's agents, on account of the confusion of the orders, did not buy. The next day was a holiday, and the day after cotton futures had risen several points. In an action for damages, the Judge instructed the jury, that they might give as damages, the difference between the prices on the 3d and the 5th; *Held*, that there was error.

2. If a telegraphic message be in the form of a proposal to buy or sell on certain terms, its importance appears on its face; but if its importance is not thus disclosed, and the sender does not have it repeated, when thereby a mistake could be avoided, it is at his own risk, in the absence of gross negligence of the servants of the telegraph company.

3. Whatever the analogy between common carriers of goods and public carriers of messages, the loss of a bargain, from which profit would have resulted, cannot be visited in damages upon the carrier, unless informed of the purpose or importance of the message.

(General responsibility of Telegraph Companies for erroneously delivering, and delay in delivering messages, discussed by SMITH, C. J.)

CIVIL ACTION, tried before *Gilmer, J.*, at January Term, 1887, of the Superior Court of CABARRUS.

There was a verdict and judgment for plaintiffs, and defendant appealed.

The plaintiffs, Cannon, Fetzer & Wadsworth, cotton merchants, engaged in business at Concord, in this State, had entered into contracts with persons in New York, to deliver to them respectively one hundred bales of cotton in December, 1879, and five hundred in February of the next year. In order to provide for fulfilling said contracts, in the forenoon of the 3d day of November preceding, they placed in the hands of the defendant's agent and operator, a message, to be transmitted over the wires to Tannahill & Co., their agents in New York, in this form :

" If market is firm and advancing, narrator."

At a later hour the same morning, about the hour 11: 45, and after receiving a telegram giving the state of the market on that day, a second message was sent, containing the simple word " Narrator," and omitting the prefacing conditions of the first. Neither of these dispatches had upon them any marks indicating the hour at which they were delivered to the operator, but each was endorsed by the operator with the hour at which it was sent, showing the first to have been started at 11: 15 a. m., and the next at 12: 35 p. m.

There being no direct single telegraphic wire connecting these points, it was necessary to transmit such communications, when required, to what are denominated relay offices, where the message was received, and by repeating, forwarded to its destination, one of them, used at Concord, being at Charlotte, and the other at Greensboro; and messages were sent indifferently by the one or the other, whichever, less pressed with other business, could most speedily forward them.

The first of these messages passed through the Charlotte office, and thence was sent on to Richmond, where it could not be immediately forwarded, in consequence of the bad working of the wires, from atmospheric or other disturbing

cause, and the consequent accumulation of business in the office, and suffered some delay, reaching New York at 1:20 p. m.

The later message, passing through and stopping at Greensboro, with the greater facilities afforded then by that route, arrived and was delivered three minutes earlier than the first.

There being nothing upon the face of either to show its priority in time, and the market not indicating a tendency to advance, the agents forbore to proceed, and did not carry out the instructions, exercising their judgment, as authorized in the first forwarded and last received dispatch.

The Cipher Code, as the book is designated, in which unexplained, and unmeaning without, words are used by the plaintiffs to convey directions, unintellible to others than those who have learned it, contains, according to the testimony of one of the plaintiff firm, 180 pages, with about 20 ciphers on each, and 35 such on the page whereon the word *"narrator"* is found. The telegraph operator had before been in the plaintiffs' service, and seen the book, but, as he declared, when giving in his testimony, did not know its cipher import, nor understood the importance of the communication, though as the plaintiff J. W. Cannon, who handed in the first message at 9:30 a. m., swore, that in doing so, he informed the operator, W. H. Holt, of his wish for the prompt sending off of it in order that it might reach New York, if possible, before the opening of the cotton market that day.

The dispatches reached that city and were delivered to the agents, Tannahill & Co., one hour and a half before the closing of the cotton exchange, which is at 3 p. m., and they were proceeding to make the purchases under the unconditional order, when they were stopped by the first order, the filling of which was dependent on the state of the market, which was not firm, and funds of the plaintiffs sufficient for the purpose in their hands.

On November 3d, cotton futures, deliverable in December, were selling at 11.01, and in February, at 11.27. The next day the exchange was not opened, it being a legal holiday, and on the 5th day of November, the price had advanced for these deliveries, as it did further on the day succeeding, to 11.39 and 11.65, respectively.

The messages were sent on printed forms, in the upper part of which (and to this attention is called in a memorandum at the foot, in large capital type,) is the following clause:

" All messages taken by this company are subject to the following terms ":

" To guard against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the originating office. For this, one half the regular rate is charged in addition. It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; nor for mistakes or delays in the transmission, or non-delivery of any repeated message beyond fifty times the sum received for sending the same, unless specially insured; nor in any case for delays arising from unavoidable interruption in the working of the lines; or for errors in cipher or obscure messages.

"And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company, when necessary to reach its destination."

Then follows a clause providing for insuring the correct transmission of the message over the lines of the company, at an additional charge of one per cent. for 1,000 miles or less, and two per cent. for a greater distance.

It does not appear that the plaintiffs, by their agents or otherwise, made any contract for the purchase of cotton to meet their own future deliveries, at the enhanced or at any price, and under the directions of the Court the jury were allowed to estimate the damages at the difference in price in the article on the 3d and 5th days of the said month, the advance between those dates being found by the jury to be $855 on the entire lot, with the liberty of allowing interest thereon, which the jury did give, at the rate of six per cent. per annum. To this instruction, as well as to many others given, or refused when requested by defendant's counsel, exception was entered, which we do not find it necessary to examine, nor indeed to determine the effect upon the defendant's liability for the alleged negligent delay in transmitting the message.

*Mr. Jno. Devereux, Jr.*, for the plaintiffs.
*Mr. P. D. Walker*, for the defendant.

SMITH, C. J., (after stating the case). Without passing upon the question of the plaintiffs' own culpability in sending off a second so near the first message, without any intimation upon its face that a previous one had been sent, which the last was intended to modify, and with no allusion whatever to it, a fact which seems to have caused the perplexity in the minds of the agents as to what ought to be done, and in consequence they did not act at all; or upon the indifference of the agents themselves in not, at once, inquiring, by telegraph, the meaning of the conflicting communications, and regulating their conduct by the information thus obtained, we think it was but a reasonable requirement, that the importance of the message, and of its speedy, as well as accurate transmission, should have been known to the receiving operator, so as to stimulate his activity in forwarding it, in more distinct and direct terms than those tes-

tified to by the partner. The message itself speaks no certain sound, and conveys to the reader unacquainted with the new meanings affixed to words in the Code, no suggestion as to its real significance, as it did not, as the operator swears, to himself. This is but a reasonable requirement on the part of the company, and if the sender chooses to speak in unintelligible language to those who are to pass it over the wires, it is due to the company, if it is to be held responsible for serious damages, that the information of its importance should be given to the sending operator, in order that he may communicate it to an intervening agency employed in forwarding, and thereby diligence and care be secured from each. If the message be in the form of a proposal to buy or sell on certain terms, so that, in case of concurring minds, a contract would result, its importance would appear on its face; if not thus disclosed, and a party chooses, to send a single unrepeated message, liable to be misunderstood and erroneously conveyed in passing through other offices, when, at small additional expense, the mistake could be avoided, it should be at his own risk, in the absence of gross and inexcusable negligence on the part of the company and its servants.

Such is the import of the ruling in *Lassiter* v. *Tel. Co.*, 89 N. C., 334, where the plaintiff assumed the hazard of a single communication, and acted upon it.

There are decisions which hold an analogy between public carriers of goods and public carriers of messages, and put the same rigid responsibility upon each. The supposed analogy is repudiated by others, as a message transmitted has not a property value like goods, requiring safe custody and delivery.

But assuming some such similar relation to have been formed between them and the person employing their services, it by no means follows, in either case, that the loss of a bargain made, or which might have been entered into,

100—20

from which profit would have resulted, can be visited in damages upon the carrier uninformed of the purpose or importance of the communication. Thus in *Horne* v. *Mid. Rail Co.*, L. R., 7, C. P., 583, a case commented on in Wood's May. Dam., Sec. 34, page 40, the plaintiff had contracted to deliver a lot of shoes in London, on February 3d, 1871, intended for the use of the French army, and on delivering them to the company for transportation, he gave the information to the latter, that the contract required a delivery on that day, but did not state the special nature of the contract. In consequence of the delay in the carriage, the contract could not be complied with, and the goods were refused. The market price had not varied between the day when the shoes were due, and that on which they were received, but it was below the contract price, of which the company was ignorant. It was held that the company was not liable for this difference, it not having been advised of the special circumstances which led to the special loss.

And so in *Sanders* v. *Stuart*, 1 C. P. D., 326, noticed in the next section of that work, the rule was extended to a telegraph company. The plaintiffs intrusted the defendant with a message in cipher to be sent by telegraph to America, which was not delivered, and the plaintiffs lost considerable profits in consequence, which otherwise would have been made. The message was unintelligible to the defendant, and so intended to be, giving him no clue as to the special loss that might result from his negligence. It was held, that no more than nominal damages could be recovered. But a more serious obstacle, in the way of the plaintiffs' recovery of substantial damages, is presented in the fact that they made no contract, from which either profit or loss could come, did not buy (the agents acting for them) at the advanced rates beyond what the cotton might have been bought for, on the day of the reception of the messages, and,

for aught that the case shows, they might have bought at a subsequent time before they were required to deliver at the same, or at a reduced rate. However this may be, no actual loss is proved *to have been incurred,* and the loss is merely of an opportunity of making a bargain, which would have been profitable had the goods been sold on the 6th day, at the market price then prevailing. It is not shown that any loss was sustained upon the plaintiffs' contract from their being compelled to pay a higher price than that which ruled on the 3d.

But the very point, now under consideration, came before the Supreme Court of the United States at a recent term, *W. U. Tel. Co.* v. *Hall,* 124 U. S. 444, and the opinion of Mr. Justice MATTHEWS is so full, and his reasoning so conclusive, that we are content to refer to it as a controlling authority, and decisive of the case before us.

The defendant in error, plaintiff in the Court below, at 8 A. M., November 9th, 1882, sent from Des Moines, Iowa, by the company's line of telegraph a message, upon a similar form as ours, to Charles I. Hall, at Oil City, in Pennsylvania, as follows: " Buy ten thousand, if you think it safe. Wire me." The message was forwarded, and from negligence and want of care, reached Oil City at 11 A. M., the same day, leaving out the name of the person to whom it was addressed. Had it been given, Hall would have received it at 11:30, and would have bought the petroleum, meant in the message, at $1.17 per barrel, the market price.

When the name was ascertained, and the dispatch delivered to Hall at 6 P. M., the exchange was closeed, and, at the opening next morning, the price had advanced to $1.35 per barrel; and in consequence, it being left to his judgment, Hall did not buy. The action was to recover the difference in price, to-wit, 18 cents per barrel.

After an elaborate examination, following a full and exhaustive argument, with a large number of cited cases, the

Court came to the conclusion that the plaintiff could only recover the cost of the transmitting the message. The Court say: "Of course, where the negligence of the telegraph company consists, not in delaying the transmission of the message, but in transmitting a message *erroneously*, so as to mislead the party to whom it is addressed, and *on the faith of which he acts in the purchase or sale of property*, the actual loss, based upon changes in market value, are clearly within the rule for estimating damages;" "neither does it appear," the opinion proceeds to say, "that it was the purpose, or intention of the sender of the message, to purchase the oil in expectation of profit to be derived from an immediate resale."

Brought to the test of this ruling, it is plain that there have been sustained no damages for which the law will give redress upon the defendant beyond a nominal sum. Had the goods been bought on the day of receiving the message, it was not with a view to sell on the day when the price had risen, but to provide for existing engagements, and it does not appear that it could not have been bought on as favorable terms afterwards, in time to fulfil those engagements; and if so, the loss would be of expected but uncertain profits.

The rule is thus stated in a note at page 242 (332) in Ewell's Evans' Agency: "In this country the telegraph company is also liable (having referred to cases in which it is held that the liability is to the sender only in England) to the person to whom the message is transmitted, upon delivery thereof, in case of an error in transmission, attributable to the fault of the company, *"when the error is attended with damage to the person receiving it,"* referring in support of the proposition to Big. Torts, 277; Big. Lead. Cases on Torts, 619, 621, and several adjudged cases. Unquestionably, the same liability will arise when the damage results from an erroneous communication of the terms of a dispatch.

We have avoided an expression of opinion upon the numerous other exceptions taken at the trial, and will only re-

peat what was said, in substance, in *Lassiter* v. *Tel. Co.*, *supra*, in reference to the difficulties incident to a correct communication of intelligence over wires, and the reasonableness of a rule which, to insure entire accuracy, requires the message to be repeated: "The electric ticks to be given at one end of the line, and to be interpreted and read at the other, are not articulate sounds, like those of the human voice, and are much more liable to be misunderstood, and the individual handwriting of the sender himself, and his meaning, may be misunderstood;" and again, quoting the words of Chief Justice Bigelow: "The unforeseen derangement of electric apparatus, a breach in the line of communication at an intermediate point, not immediately accessible, occasioned by accident or by wantonness, or by malice, the imperfection necessarily incident to the transmission of signs or sounds by electricity, which sometimes renders it difficult, if not impossible, to distinguish between words of like sound or orthography, but of different signification; these, and other similar causes, the effect of which the highest degree of care could not prevent, make it impracticable to guard against errors and delays in sending messages to distant points."

These suggestions point strongly to the reasonableness of the requirement of a *repeated* message, by which, at an inconsiderable expense, the error in a dispatch would be avoided, and that the company's responsibility should be made to depend upon its observance, especially where the cipher form is adopted, which furnishes to the operator no means of ascertaining its import

But, for the errors pointed out, the judgment must be reversed, and a new trial had in the Court below.

Error. *Venire de novo.*