JAMES N. WILLIAMSON et al. v. POSTAL TELEGRAPH-CABLE COMPANY.

(Filed 3 November, 1909.)

### 1. Telegraphs—Message—Cipher—Notice of Importance—Damages.

A telegram reading, "Sold Tootle Mottar ninety cases twenty-eight inch six and three-quarters," is not a cipher message, and the use of the initial capital letters to the words Tootle Mottar indicates the name of a firm to whom goods are sold, and the rest of the message the quantity, kind and price thereof; and, from the nature of the business, a telegraph company receiving the message for transmission has implied knowledge of the importance of accuracy in transmission and promptness in delivery.

### 2. Same—Measure of Damages—Proximate Cause.

A telegram indicating upon its face that a commodity had been sold gives notice to defendant telegraph company that damages would probably result from an error in transmitting it; and when a message addressed to a manufacturer of cloth, a user of defendant's telegraph service, by his commission man, was negligently transmitted so as to show a difference of eighty-one cases in the quantity of goods sold to a certain firm, which caused the manufacturer not to buy the cotton for the eighty-one cases, until several days later when the price of cotton was higher, he may recover of defendant his loss in having to protect himself by purchasing cotton for the eighty-one cases later at the advanced price, as such damages will be reasonably presumed to have been in the contemplation of the parties at the time the message was received by defendant for transmission, and the direct and proximate cause of its negligence.

### 3. Same—Additional Notice.

And when, after the manufacturer informed the defendant's agent that the message was important and involved a financial loss or profit, and requested an investigation, the agent tells him later in the same day that the message as delivered correctly stated the number of cases sold, relying upon which he does not protect himself, the company has received additional notice of the importance of the message, and also through its second error caused the injury.

### 4. Telegraph Companies—Messages—Contracts—Conflict of Laws—Public Policy—Comity.

A stipulation printed on a message form which limits the liability of a telegaph company for negligence in transmitting an unrepeated message is void in North Carolina, it being contrary to public policy; and if it is upheld by the laws of another State wherein the message had been received by the company and the contract for transmission had been made, the laws of such other State will not be recognized here through comity.

BROWN and WALKER, JJ., concurring in part.

APPEAL by defendants from *Lyon, J.,* April Term, 1909, of WAKE.

The facts are stated in the opinion of the Court.

*Womack & Pace* for plaintiffs.
*Robert C. Strong* for defendant.

CLARK, C. J.    This action arose over a message sent from New York by R. Lindheim, reading as follows:

"W. H. WILLIAMSON,
        *Pilot Cotton Mills, Raleigh, N. C.*
    "Sold Tootle Mottar ninety cases twenty-eight inch six, and three-quarters.                                    R. LINDHEIM."

In the transmission of this message the word "ninety" was changed to the word "nine."    When the message was received in Raleigh on 1 December, by said Williamson, believing that there had been a mistake, he called up the office of the Postal Telegraph Company, in Raleigh, and asked if there was not a mistake in the message, in that the word "nine" was wrong.    The office of the Postal Telegraph Company replied that they would look it up and let him know.    At that time Williamson told them that it was a very important. matter and that the Postal Telegraph Company had better look into it carefully, as it meant financial loss or profit to the plaintiff.    On the same day on which this telephone. conversation took place the Postal Telegraph Company called up the said Williamson and stated that the message was correct as delivered, and that "nine" cases was right.

Not until 4 December did Williamson receive by mail a copy of the correct message, thus ascertaining that the word "nine" should have been "ninety," according to the original message filed in New York.

Testimony was introduced to show that if it had been transmitted correctly at first, Williamson would have immediately gone into the market and bought cotton from which to manufacture the ninety cases of goods on 1 December.    As it was, he was deterred from buying the cotton until 4 December, at which time cotton had advanced so that the said Williamson was forced to pay the sum of $283.50 in excess of the amount he would have had to have paid had he bought the cotton on 1 December.    For this amount the jury rendered a verdict in favor of the plaintiff, having also responded to the first issue that the plaintiff had been injured by the negligent transmission of the telegram.    In the message as filed "Tootle Mottar," indicating the vendees, were words beginning with capital letters, thus denoting proper names.

Exceptions 1, 2, 3, 4; 5, 6, 7, 8, 9 and 14 were to evidence tending to show that the sender of the message was the agent of the

plaintiff in the absence of directions; that the agent and the plaintiff had an understanding about the telegraphing of such message; what the plaintiff did when he ascertained that the message was transmitted incorrectly; why he bought the cotton at all, and other questions of similar character covered by the exceptions above enumerated. But this was proper testimony, as it went to show the *bona fides* and nature of the transaction, what damages would reasonably result from negligence by altering the message in transmission, and that the defendant must have known that damages would likely result from such negligent alteration.

The plaintiff appropriately cited *Garrett v. Telegraph Co.*, 83 Iowa, 263, where the following message was sent:

"GREGORY, COOLEY & Co.,
        *U. S. Yards, Chicago, Ill.*
    "Send me market Kansas City to-morrow and next day.
                                          A. M. GARRETT."

The court admitted testimony to show that there existed an arrangement between Garrett and Gregory, Cooley & Co., as agents, by which no answer to such message meant that there was no change in the market. This message was undelivered, and Garrett, receiving no answer, inferred that there was no change in the market. Acting upon this, he bought cattle in Kansas City or St. Louis, and, there being a change in the market, he lost by his trade. The court admitted the testimony showing the arrangement, and held that it should have been left to the jury the question if, in such a case, the damages were such as were in the contemplation of the parties. In the case at bar the jury answered the issue of negligence and also the issue of damages in favor of the plaintiff. All the facts surrounding the sending and receiving the message, the damages, etc., were clearly brought out and assisted the jury in arriving at the true question of negligence, consequential damages, etc.

The following questions are presented by the exceptions taken on this appeal:

1. Was the message an obscure or cipher message?

2. Was the message such as would put the defendant on notice of damages resulting as the consequence of an erroneous transmission?

3. It was admitted that it was an unrepeated message, written on one of the usual blanks of the company. This being true, is such a stipulation as set out in the statement of facts against the public policy of the State of North Carolina?

151—15

4. The telegram having been filed in the State of New York, admitting for the sake of argument that "the unrepeated stipulation" is valid in New York, will the courts of North Carolina recognize it as such and bar recovery?

1. The words "Tootle Mottar" in the message as filed by the sender began with capitals, indicating the name of the firm to whom the goods were sold. The rest of the mesage showed the quantity and kind of goods sold, and the price. The message was to a cotton mill and from a commission merchant, of the nature of whose business, they often using the wires, the defendant must have had knowledge. There was no cipher and nothing cryptic about the message. The defendant's agent must at once have known the nature of the telegram and that damage would likely result from any material alteration in transmission. Such business is necessarily largely transacted by telegraph, and the defendant transmits such messages with knowledge of the importance of accuracy and promptness in delivery.

2. The nature of this message put the defendant on notice that damage would result from negligence by which it would be altered or delayed. It is not material that it did not have exact knowledge of the reason or extent of such damage. It is enough that it knew damage would probably result. In *Telegraph Co. v. Lathrop*, 131 Ill., 586, it is said: "We think the reasonable rule, and one well sustained by authority, is that where a message, as written, read in the light of well-known usage in commercial correspondence, reasonably informs the operator that the message is one of business importance and discloses the transaction, so far as is necessary to accomplish the purpose for which it is sent, the company should be liable for all the direct damages resulting from a negligent failure to transmit it, as written, within a reasonable time, unless such negligence is in some way excused."

In *Telegraph Co. v. Griswold*, 37 Ohio St., 309, the message read as follows: "Will give one hundred and fifty for twenty-five hundred at London. Answer at once, as I have only to-night." As in the case at bar, the telegraph company contended that the message was indefinite and unintelligible, and that therefore a recovery was unauthorized. The court said: "It appears upon its face that it related to a business transaction, involving the purchasing and selling of property. The company, therefore, was apprised of the fact that pecuniary loss might result from an incorrect transmission of the message. Where this appears, there is no such obscurity that relieves the company from liability from negligently failing to transmit.

Again, in *Dixon v. Telegraph Co.*, 3 App. Div., N. Y., 60;

38 N. Y. Sup., 1056, the following message was held sufficient to disclose to the company the fact that it related to an important business transaction, and the company, therefore, was held liable for damages for a negligent transmission of the message: "One dollar fifty, freight thirteen cents. Answer quick." To same purport, *Telegraph Co. v. Milton,* 11 L. R. A. (new series), 560 (Fla.), and cases cited thereunder; also, *Garrett v. Telegraph Co., supra; Telegraph Co. v. Wenger,* 55 Pa., 262; *Maurie v. Telegraph Co.,* 58 N. Y. Sup. Court, 126. *Telegraph Co. v. Blanchard,* 68 Ga., 298, is very much in point. In that case the message read: "Corn two hundred September and one hundred August." The court held that such message on its face showed that it was a commercial message, of value, and that it was sufficient to render the company liable for negligent or improper transmission.

But the defendant insists that the damages suffered by the plaintiff in the case at bar could not have been in the contemplation of the parties at the time the message was sent. The authorities hold almost uniformly that it is sufficient to create a liability on the part of the company for all damages directly and approximately resulting from the negligent acts of its agents in failing to transmit a message in the form in which it is delivered, or in omitting to send it at all, that the rise of the market price of cotton resulted in loss to the plaintiff. Such a loss was the direct, immediate, proximate and natural result of the failure of the proper transmission of the telegram, and was in fact contemplated by the parties and was the natural result of the failure to deliver a commercial message. *Cannon v. Telegraph Co.,* 100 N. C., 300, cited by the counsel for defendant, does not apply, because the message over which the suit arose there was in cipher. In passing, however, we call attention to the fact that in that case it is stated that "If the message be in the form of a proposal to buy or sell on certain terms, its importance would appear on its face." . . . In the case at bar the message was written, not in cipher, but in plain English, and it was sufficient to show on its face a business transaction of importance.

*Williams v. Telegraph Co.,* 136 N. C., 82, cited in the brief of appellant, does not apply, for the reason that in that case the plaintiff was suing for mental anguish, and there was nothing in the message in any respect to show the importance of the message or that mental anguish might have resulted from the failure to correctly or promptly transmit the message. On its face it did not show why it should be delivered or why it should have been sent, or that it in any way concerned a commercial transaction or even one of a social nature.

* WILLIAMSON *v.* TELEGRAPH COMPANY.

In the case at bar the telegram conveyed the information that parties in New York had sold to Tootle Mottar ninety cases of some commodity, and that they desired to have the plaintiffs notified in Raleigh. The defendant's contention that the purpose for which this notification was desired should have been communicated to the defendant company, and that before the plaintiff could claim damages for the negligent transmission of such message the sender of the message would have had to inform the operator of the reason for wiring such a message, would rob the commercial world of the benefit of the quick mode of communication; and to permit the barring of recovery for failure to understand every message which passes through his hands by the agent, and requiring the exact meaning of the message, the reason for sending it, and almost the exact results that would come about if the message is not delivered, would surround the sending of telegrams with such regulations as would deprive a business man of the very use for which the telegraph is used, namely, quickness and dispatch.

Besides. in this case. Williamson, after the receipt of the telegram, called up the office of the defendant and informed it that he believed that there was a mistake, to which the agent replied that he would look into the matter and see if there was a mistake; that subsequently, on that same day, he called Williamson over the 'phone and informed him that "nine" was correct. The testimony shows that only after Williamson had been informed that there was no mistake in the message did he decide not to buy the cotton. Hence the company had additional notice of the importance of the message, and through its second mistake also caused the injury.

3. The defendant sets up the further defence that this message was written on one of the blanks of the company, and that as part of the contract of transmission there was a stipulation that it would not be responsible or liable for mistakes or delays in the transmission of a message unless the same was repeated at one-half the regular rate. The question, therefore, arises as to whether this stipulation bars the recovery of the plaintiff. It is contended by the defendant that this was a New York contract, and that such a stipulation is valid in the State of New York, barring recovery unless the message is repeated. Granted, for the sake of argument, that such is true; the plaintiff, on the other hand, contends that such a stipulation is void in North Carolina, having been expressly held to be against public policy. *Brown v. Telegraph Co.,* 111 N. C., 187 (overruling *Lassiter v. Telegraph Co.,* 89 N. C., 334). *Brown's case* was reaffirmed in *Sherrill v. Telegraph Co.,* 116 N. C., 658. Our courts will not

give effect to any contract or stipulation in violation of our public policy. In both above cases the message came from points in other States.

4. Such a stipulation having been declared void by our courts as against the public policy of this State, will our courts, through comity, recognize the validity of the contract in the case at bar simply because it was made in the State of New York? Ordinarily matters bearing upon the execution, interpretation and validity of a contract, we know, are determined by the law of the place where made. To this rule, however, there are well-known exceptions, as follows: First, when the contract is contrary to good morals; second, when the State of the forum, or its citizens, would be injured by the enforcement by its courts of contracts of the kind in question; third, when the contract violates the positive legislation of the State of the forum—that is, contrary to its Constitution or statute; and, fourth, when the contract violates the public policy of the State of the forum. *Canada v. Railroad,* 143 N. C., 443.

The contract in question comes under the second and fourth exceptions. Comity between States as to the recognition of the laws of one by another is the voluntary act of the State offering it, but it is inadmissible when contrary to its policy or prejudicial to its interests. *Gooch v. Faucett,* 122 N. C., 270; *Canady v. Railroad, supra; Armstrong v. Best,* 112 N. C., 60; *Pope v. Hank,* 155 Ill., 617; 28 L. R. A., 568; *Seaman v. Temple Co.,* 28 L. R. A., 430 (Mich.).

Our courts having held that such a stipulation is against the public policy of the State, and having also held that comity is inadmissible in the enforcement of a contract which is against the public policy of the State or prejudicial to its interest, the enforcement of the stipulation in the case at bar would be unwarranted, and the exclusion of the testimony as to the validity of such in the State of New York was proper.

A majority of the cases cited by the attorney for the appellant held that the stipulation would not free the company from liability in case of gross negligence or failure to transmit. We fail to see how the company could be relieved simply because of the grossness of the negligence. In other words, how can a company contract to relieve itself of one degree of negligence and at the same time be held accountable for another degree of negligence? Our Court has held not. See *Brown v. Telegraph Co., supra.*

Attention is called to the fact that some of the cases which hold that these stipulations are valid also hold that, even though such a stipulation may bind the sender, it would not bind the

receiver. This is intimated in *Primrose v. Telegraph Co.,* 154 U. S., at bottom of page 21. See, also, *Telegraph Co. v. Dryburg,* 35 Pa. St., 298; *Harris v. Telegraph Co.,* 9 Phil., 88; *De la Grange v. Telegraph Co.,* 25 La. Ann., 386.

These decisions place the invalidity of the stipulation, so far as binding the receiver of the message, on the ground that he had no notice of the printed condition until after the message was received, and could not therefore agree to it in advance.

In the present case the jury found as an actual fact that the plaintiff was injured by the negligent transmission of the message, as alleged in the complaint. The excellent brief of the plaintiff, which we have so largely used in preparing this opinion, thus justly sums up:

1. The message was a commercial message, and therefore showed upon its face the importance of prompt and correct transmission.

2. That it was sufficient to give notice to the defendant that damage might occur through its improper transmission.

3. That the damages which actually occurred, as found by the jury, were the natural, immediate and proximate consequence of the negligence of the defendant.

4. That the stipulation known as the "repeated stipulation" is void in the State of North Carolina on the ground of public policy, and that, although valid in the State of New York, it will not be recognized by the courts of this State, because it is against public policy.

No error.

BROWN, J. I concur in the judgment of this Court, upon the ground that, after the telegram was delivered to plaintiff at Raleigh, he notified defendant's office here that there was probable error in the transmission of the message; that the matter was one of financial importance to him, and requested the defendant to investigate at once. This occurred in ample time to save plaintiff from loss, and was complete notice to the defendant's agents here of the important character of the message, and that financial loss might result to plaintiff in case an error had been committed. When they had the message repeated for their own information, they informed the plaintiff that there was no error committed, and upon such reassurance the plaintiff had a right to rely. As is held in *Williams v. Telegraph Co.,* 136 N. C., 82, plaintiff was not bound to notify defendant of each particular item of damage that might result, but it is sufficient if defendant had notice that financial loss would result from error in transmitting the message.

This view of the case renders it unnecessary to discuss the other points raised by the learned counsel for defendant.

MR. JUSTICE WALKER concurs in this opinion.