J. S. BROWN et al. v. THE POSTAL TELEGRAPH COMPANY.

*Contract, Invalid Against Public Policy—Telegraph Messages—*
*Negligence—Damages.*

1. A condition, printed upon the form used for telegraphic messages, that the person or company undertaking to transmit the message would not be liable for damages resulting from delays or mistakes, unless repeated, and then only to an amount therein limited, is contrary to public policy and invalid. (*Lassiter* v. *Telegraph Co.*, 89 N. C., 334, overruled.)

2. There are no "degrees of negligence" in estimating the damages resulting from a failure to properly transmit a telegraphic message; the injured party is entitled to recover, not according to the degree of negligence, but for the injury he has received, unless in a case where punitive damages are allowed.

CIVIL ACTION, tried before *Whitaker, J.,* at February Term, 1892, of GRANVILLE Superior Court.

Plaintiffs' agents and commission merchants in Richmond, in May, 1891, wrote and delivered to defendant's agent a message stating that they had received an offer of *twenty*-seven cents per pound for tobacco belonging to plaintiffs on deposit with them, and asked a speedy reply. The defendant's agent negligently substituted the word "*forty*" for "twenty" in the message. Plaintiffs, believing they were offered forty-seven cents, directed a sale, and upon discerning, after the sale, the error, brought this action to recover damages. The message was not repeated.

The following issues were submitted to the jury, who for their verdict returned the answers written below :

"Did the defendant operate and control the line of telegraph between Henderson and Oxford ?

Answer—Yes.

What was the value of the tobacco in the hands of M. T. Smith & Co., on May 25, 1891 ?

Answer—$1,766.53."

The plaintiffs thereupon tendered the judgment for the difference between the sum received and the value of the tobacco as found by the verdict, which his Honor refused to sign upon the ground that as the message delivered to Brown & Knott was an unrepeated message, and the defendant stipulated on the back of the blank upon which said message was written, that it would not be liable for damage on account of unrepeated messages, the defendant was not liable beyond the amount paid by plaintiff for said message, to-wit, thirty-seven cents. Plaintiffs excepted.

His Honor then signed the judgment for thirty-seven cents and costs. Plaintiffs excepted and appealed.

*Messrs. J. W. Graham* and *A. W. Graham*, for plaintiffs.
*Mr. John Devereux, Jr.*, for defendant.

MACRAE, J.: The plaintiffs were damaged by the negligence of defendant's agent in substituting the words "forty-seven" in the message as delivered, for "twenty-seven" in the message sent, by reason whereof the plaintiffs' tobacco was sold for a price less than it would otherwise have brought on the market. The message was written on the blank furnished by the Western Union Telegraph Company, with the well-known stipulation upon it that the company would not be liable for damages caused by mistakes or delays, unless repeated. This message was delivered to and sent by the agent of the defendant The Postal Telegraph Co., but we prefer to treat the question presented as if there were but a single and controlling point involved, and to this we address ourselves.

It was not ordered by the sender to be repeated, and was therefore what is known as an unrepeated message. Upon the admissions in the pleadings, and the verdict in response to the issues fixing the value of the tobacco at the time of the sale, the plaintiffs moved for judgment in their

favor for the difference between the sum actually received by them and the value of the tobacco. His Honor, in accordance with the decision in *Lassiter* v. *Telegraph Co.*, 89 N. C., 334, denied the plaintiffs' demand and signed judgment in favor of the plaintiffs for the sum paid by the sender to the defendant for the transmission of the message. The plaintiffs appealed, and this brings up again the question whether the stipulation upon the back of the blank, and made part of the contract, as before referred to, is valid and binding upon the parties.

It was held by a divided Court in *Lassiter* v. *The Telegraph Co.*, *supra*, that a stipulation contained in a form used by a telegraph company in its business operations, to the effect that it will not be responsible for mistakes in transmitting unrepeated messages, is a reasonable one and will be enforced by the Courts. Lassiter's was the first case which came before this Court involving a construction of the said stipulation and its effects upon the rights and liabilities of the parties thereto. This Court, recognizing the persuasive authority of the Courts of last resort in other States, adopted the views expressed in a majority of the cases which had been decided, although even then there were very respectable authorities to the contrary. Since this decision was made, there has been much discussion, and many and conflicting adjudications upon the same question have been made in other Courts. And we are induced to review the opinion heretofore announced by this Court.

It was early held that telegraph companies were not common carriers and therefore not insurers, but that there was an analogy between the duties and responsibilities of these transmitters, for reward, of messages, and those of carriers of goods for hire, and that the former were, like the latter, held to a high degree of diligence in the conduct of their business. Thompson on Electricity, sec. 137, and note.

When the art of telegraphy was yet in its infancy, when its operators were untrained, its appliances crude and its efforts tentative, it would have been unreasonable to require that skill which would be demanded in a more advanced stage when, with practiced operators and perfected machines, the system had become an indispensable part of the business of the world.

The condition printed as a part of the contract upon the back of the blank upon which messages were written, that, to ward against mistakes and delays, the sender of a message should order it repeated at an additional charge of one-half the regular rates, was considered not so much a stipulation against negligence, as a reasonable precaution in order to procure accuracy in the transmission of messages by means of the electric current. It was then that by the fancied analogy between this system and the business of the common carrier, the Courts came to use the terms which had been used with regard to the latter, and to hold that the telegraph companies might, on account of the novelty of their operation, provide against negligence on the part of their employees, or by reason of imperfections in their instruments, by means of which negligence or imperfections, mistakes and delays were permitte 1 to occur in the transmission of messages. The then recognized distinction between what was called gross and ordinary or slight negligence was invoked, and it was held that while for ordinary or slight negligence they would not be responsible, yet they would be held to account for gross or wilful negligence.

But negligence is the failure to exercise that care which, under the circumstances of the case, a prudent man ought to use. There can be no degrees in negligence in this matter. In ascertaining what damages may be awarded against one for injury by reason of negligence, the question whether it was gross or ordinary may determine as to punitive or compensatory damages; or where the doctrine of compara-

tive negligence is recognized, it may be necessary to distinguish between degrees; but where there is a contract to transmit a message for reward, a failure to perform the undertaking is either excusable or negligent—if negligent, the party injured thereby is entitled to his damages, not according to the degree of negligence at all, but in proportion to his injury, unless it be a case in which punitive damage is allowed. If, on account of an electrical disturbance in the atmosphere a message could not be sent, so that there was delay; or it could not be but imperfectly sent, so that words were dropped; or if from any other cause, not to be provided against with the appliances afforded by science and by a reasonable foresight, there was a failure to comply with the contract, these were matters provided for by law, and not necessary to be stipulated against in the contract.

The old principle that one cannot provide by contract against liability for negligence, applies to every species and degree of negligence or tort. Cooley on Torts, 687. In *Lassiter* v. *Telegraph Co., supra,* this exemption from liability "is not extended to acts of omission involving gross negligence, but is confined to such as are incident to the service, and which may occur when there is but slight culpability in its officers and employees."

In *Pegram* v. *Telegraph Co.,* 97 N. C., 57, it is said that the stipulation on the back of the blanks restraining liability for unrepeated messages, where the complaint is not a mistake in the message, but for delay or failure in delivery, is unreasonable and void. In *Cannon* v. *Telegraph Co.,* 100 N. C., 300, the doctrine in Lassiter's case is affirmed, but the language of the opinion in *Telegraph Co.* v. *Hall,* 124 U. S., 444, is quoted with approval: "Of course, where the negligence of the telegraph company consists, not in delaying the transmission of the message, but in transmitting a message erroneously, so as to mislead the party to whom it is addressed, and on the faith of which he acts in the purchase

or sale of property, the actual loss, based upon changes in market value, are clearly within the rule for estimating damages."

In Thompson v. Telegraph Co., 107 N. C., 449, reasserting that this stipulation, as far as delay is concerned, is void, a doubt is intimated as to its validity at all, and it is plainly said, though not necessary to be declared in the decision upon the point involved in that case, " The more recent cases, founded upon the more thorough investigation and thought given to the subject, are to the effect that any stipulation restricting the liability of the telegraph company for negligence, even as to mistakes in transmission, is void." We refer to the cases from other States cited in the opinion just referred to. Gillis v. Telegraph Co., 61 Vt., 461 ; Ayer v. Telegraph Co., 79 Me., 493.

We have come to the conclusion, after a natural hesitation, to overrule a decision of a majority of this Court announced by the former very learned Chief Justice, that the true principle is, that telegraph companies are corporations erected for the public benefit, endowed with special privileges, such as the right of eminent domain, performing the most important functions of commerce, and, in cases where celerity and dispatch are necessary, taking the place of the postal service, that at least ordinary skill and diligence are required of them, and that public policy forbids they should be protected from liability for damage by reason of any degree of negligence. Gray on Communications by Telegraph, sec. 46, and cases there cited; Thompson on Electricity, secs. 235, 236, and note.

As the art of telegraphy has now attained such high efficiency, there is less reason why any rule of safeguard to the public interest should be relaxed.

The principles of the law are always the same, but they extend their grasp and take in the necessity for those new things which the advance in science and art provide for the

public safety and convenience, and require them to be used. The increasing number of higher Courts, both State and Federal, with their ever accumulating decisions, render it impracticable that we should cite many of the authorities bearing upon the subject we have under consideration. Most of them are referred to in Gray's Communication by Telegraph, ch. 5; Thompson on Electricity, chs. 6 and 8; 2 Harris on Damages by Corporations, sec. 869 *et seq.*

There is an additional proviso in the printed endorsement upon the telegraphic message blank to that which we have just considered: "Nor for mistakes or delays in the transmission or delivery, or for non-delivery of any repeated message, beyond fifty times the sum received for sending the same, unless specially insured." The reasons which have brought us to the conclusion that the condition we have already considered is void, will apply with equal force to the one now presented. "The precept of public policy which, on the ground of the inequality of the parties, the compulsion of the employer and the duties of a telegraph company towards the public, dictates the invalidity of a stipulation limiting the liability of a telegraph company to nothing beyond the price paid for transmission, must equally deny validity to a stipulation limiting the liability of a telegraph company to fifty times that price." Gray on Communication by Tel., sec. 51.

There is error. Upon the admissions and the verdict, judgment should be rendered in favor of the plaintiffs and against the defendant for the sum claimed in the judgment presented by them as set out in the record.

Judgment Reversed.