# ELDRIDGE PACKHAM, JR., *vs.* THE GERMAN FIRE INSURANCE COMPANY OF BALTIMORE.

*Fire Insurance—Loss Caused by Wrongful Act of Third Party— Right of Insurer to be Subrogated—Release of Wrong-doer Discharges the Insurer—Pleading.*

When a loss, covered by a policy of fire insurance, is caused by the wrongful act of a third party, and the insured is entitled to demand compensation from such third party as well as under the policy, then the insurer paying the loss is entitled to be subrogated to the rights of the assured against the wrong-doer. In the case of such a loss the wrong-doer is the principal debtor and the insurer is a mere surety. If the assured releases the wrong-doer from liability, then, to the same extent, he discharges the insurer, because the latter's rights of subrogation is defeated, being founded only on the right of the insured.

Defendant, an insurance company, insured the plaintiff against loss by fire on office fixtures. The policy provided that whenever the company should pay any loss, the assured should assign over his right to recover therefor against any other party. Plaintiff held policies in other companies on his stock of merchandise. A fire was caused by the negligence of a gas company, against which the plaintiff brought an action. A judgment was rendered by agreement assessing damages for loss on merchandise and profits, the loss on fixtures being expressly excluded, and this judgment was paid. Plaintiff did not reserve any right of action against the gas company for the loss on fixtures. In an action against the defendant to recover for such loss, *Held*,

1st. That the plaintiff had but one right of action against the gas company for the tort by which the whole loss was occasioned, and when he excluded from the assessment of damages in the suit against that company so much of the cause of action as relates to the loss on fixtures, he released his right of action therefor against the gas company.

2nd. That since the plaintiff had disabled himself from maintaining any action for the loss on fixtures against the gas company, and thereby destroyed defendant's rights of subrogation, he is not entitled to recover on the policy against the defendant.

3rd. That although the policy sued on provides for an assignment of the right of the insured upon payment of the loss by the insurer, yet it is not necessary, under the circumstances of this case, for a plea to aver payment or tender as a condition precedent to subrogation, because the plaintiff possessed no right which he could assign.

In the above mentioned action, to one of the defendant's pleas which set forth the facts defeating the right of subrogation, the plaintiff replied that the defendant was a party to the agreement under which the judgment against the gas company was rendered and assented to the proceedings. *Held*, upon the facts, that there was no evidence to show that the defendant or its authorized agent had consented to the extinguishment of the right of subrogation.

Appeal from the Court of Common Pleas (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*George Whitelock* and *Edward I. Koontz*, for the appellant.

In *Parrott* v. *Chestertown Bank*, 88 Md. 516, it was conceded to be the law that there must be payment before there can be subrogation of a surety. Here the right of subrogation and matters arising after this suit was brought are

relied upon as an excuse for the non-payment of an insured loss that occurred more than a year before the plea was filed ; and there is *no averment even of tender or offer* to do that which was a condition precedent to subrogation to any extent whatever. *Niagara F. Ins. Co.* v. *Fidelity, etc.,* 123 Pa. St. 521. The "stipulation" for subrogation was no more than a general declaration of the principles of subrogation, and conferred no greater rights upon the appellee than the latter would have had without an express agreement. *Columbia Fin.* v. *Ky. Ry.,* 22 U. S. App. 59. The right of subrogation did not arise from the mere obligation to pay ; it could spring only from payment. *People's Ins. Co.* v. *Strachle,* 2 Cinn. Sup. Ct. 194; *Aetna Ins. Co.* v. *Middleport,* 124 U. S. 534. The "stipulation" was not a conventional subrogation (*Sheldon,* section 5), and it was not in derogation of the rights of the appellant, and it must be held to have been entered into subject to the full play and operation of those rights. *Phœnix Ins. Co.* v. *Erie Transpor. Co.,* 117 U. S. 320. It was therefore a "stipulation" for subrogation, subject to the following rights in the appellant :

1. The appellant was entitled to receive complete compensation for his entire loss before the appellee acquired any enforceable right. *Beach Ins.,* section 818. This right of the appellant was a consideration of primary and paramount importance, and it must prevail against every doubtful theory of trusteeship and of equitable estoppel. There can be no such thing as equitable estoppel until the appellant's whole claim is satisfied. *Nat. Fire Ins. Co.* v. *McLaren,* 12 Ont. 682; *Newcomb* v. *Cinn. Ins. Co.,* 22 Ohio St. 385; *Washn. F. Ins. Co.* v. *Kelly,* 32 Md. 442; *Kernochan* v. *N. Y. Bow. F. Ins. Co.,* 17 N. Y. 437.

2. Under the "stipulation," the appellant still had the right to sue in the first instance either the appellee or the gas company, the liability of the latter being not a primary but an ultimate liability (*Wager* v. *Providence. Ins Co.* 150 U. S. 108). Having first applied to the tort-feasor, the appellant merely diminished the amount of his loss to the

extent of the amount recovered, and his claim is for the balance due to him, which the plea does not, but for the bar sought to be set up, deny is still due to him.   *Hart* v. *Western R. R. Corp.*, 13 Metc. 106, 11 Pa. St. 515; *Dunham* v. *N. E. Mut. Ins. Co.*, 1 Low D. 257.

3. The appellant could maintain but one suit against the gas company.   *Aetna Ins. Co.* v. *Hannibal*, 3 Dillon, C. C. 1.   It is shown upon the face of the plea that the appellee could not in one action recover the whole loss occasioned by the fire—even if the appellant could.   With full knowledge of these conditions, which the law added to and made a binding part of the stipulation, the appellee sets up by way of defense that the appellant has destroyed its right of subrogation, although it is nowhere alleged that it ever demanded that right, as it was bound to do.   123 Pa. St. 521, *ante.*

The acts which are alleged to have destroyed the right of subrogation are shown by the plea to have occurred nearly a year after the appellee, according to its own theory, became liable, and nearly five months after suit was brought to enforce that liability, yet it is nowhere averred that the appellant ever had any notice that the appellee ever entertained the least purpose to pay the claim, or to swerve from its Fabian policy of delay.   If the appellee had paid the amount for which it was liable to the appellant, and had thereafter instituted an action against him for the recovery of its proportion of an amount which had been paid by the gas company to him in full of all losses, the appellee, before it would be permitted to recover a single penny, would be required to show that the appellant had received a sufficient sum by way of compromise to fully satisfy not only his own uninsured losses, but all expenses of every kind incurred by him in connection with the litigation.   The appellee would be required to do this because the appellant would hold only the balance over and above his own individual losses uncovered by insurance for the benefit of the insurers.   If this be true, it is strenuously insisted that it is

equally true that the appellee cannot resist the appellant's claim under its plea, unless it shows affirmatively that the amount recovered by him was more than sufficient to indemnify him against losses that were uninsured, there being no allegation in the plea of fraud or collusion. If it could not enforce its claim against the appellant in the one case it cannot resist the appellant's claim against it in the other.

*Edwin G. Baetjer*, for the appellee.

1. Under the policies sued on in this case the defendant's obligation was to indemnify the plaintiff from loss ; the plaintiff's obligation, of equal dignity, to give the defendant by subrogation all rights to recover from the wrong-doer causing the loss ; the plaintiff having for his own profit destroyed the rights against the wrong-doer and disabled himself from performing his obligation to the defendant to preserve its rights of subrogation, cannot exact from the defendant the performance of its obligation to pay to him the loss.

(*a.*) The insurance contract is one of indemnity merely, and where the loss is caused by the act or neglect of another person, the insurer is entitled, upon payment of the loss, to be subrogated to all the assured's rights against such wrongdoer. If the assured, before payment of the loss, releases the wrong-doer or disables himself from performing the provision of the policy providing for subrogation, he discharges the insurer from his obligation to pay the loss. *Hall* v. *Railroad Co.,* 13 Wall. 370; *Liverpool Steam Co.* v. *Phœnix Ins. Co.,* 129 U. S. 462; *St Louis Ry Co.* v. *Com. Ins. Co.,* 139 U. S. 235; *Platt* v. *Richmond,* 108 N. Y. 361; *Phœnix Ins. Co.* v. *Erie Co.,* 117 U. S. 321; *Dilling* v. *Draemel,* 16 Daly, 104; *Carstairs* v. *Mechanics Ins. Co.,* 18 Fed. Rep. 473; *Niagara Co.* v. *Fidelity Co.,* 123 Pa. St. 523; *Sims* v. *Ins. Co.,* 101 Wis. 586; *Atlantic Co.* v. *Storrow,* 5 Paige Ch. 295.

(*b.*) There can be but one recovery and satisfaction for the single tort. The right of an insurance company against a wrong-doer who has caused a loss is derived from and through the assured and must be enforced in the name of

the assured. The recovery and satisfaction against the Consolidated Gas Company is, therefore, a bar to any other action for that tort and the defendant's right of subrogation defeated thereby.

As Packham could not, after the first recovery and satisfaction, bring another suit for damages growing out of the same tort for his own benefit, no other suit can be brought in his name for the benefit of the insurer. The defendant's contention in this regard is fully sustained by the following authorities : In *Assurance Co.* v. *Sainsbury*, 3 Douglas, 245; an assured had been injured by riots ; his loss was covered by insurance. He brought suit against the town, but the jury, contrary to instructions, allowed him only for the part of the loss not covered by insurance. The insurance company then sued the town for the loss covered by insurance and paid by it. Lord Mansfield, in delivering the opinion of the Court, said : "That the former recovery by the assured is a bar ; shall a man sue for twenty yards of cloth and recover judgment, and then sue for ten more, saying, I said thirty yards." See also *Aetna Insurauce Co.* v. *Hannibal R. R.* 3 Dillon, 1. The case of *Omaha, etc.,* v. *Granite State Ins., Co.* 53 Neb. 514, is especially interesting and apposite on account of the similarity amounting almost to identity of its facts with the facts of the case at bar. The same rule was the rule of decision in *Phœnix Co.* v. *Erie Transp. Co.,* 117 U. S. 321; *Norwich Ins. Co.* v. *Standard Oil Co.,* 59 Fed. Rep. 984; *Sims* v. *Mutual Ins. Co.,* 101 Wis. 586.

2. That the plaintiff offered no evidence legally sufficient to establish the agreements of the defendant to proceedings connected with the settlement with the Consolidated Gas Company.

(*a.*) Deming was not proven to have been the agent of the defendant for any purpose. (*b.*) Even if he was the agent of the defendant, he was not authorized to make the agreement set up in the replication to the second plea. (*c.*) Mr. Whitelock was not authorized to make any agreement

for the defendant.    (*d.*) Even if he had been invested with full authority to bind the defendant, he did not do so.

PEARCE, J., delivered the opinion of the Court.

On December 10th, 1896, the appellee issued a policy of insurance to the appellant, insuring him against loss by fire to the amount of $750 for one year on "office furniture and fixtures generally, including iron safe, stationery and supplies, contained in brick building No. 14 Light street, Baltimore," which policy was regularly renewed, the last renewal expiring December 13th, 1899.   This policy contained the following clause : "Whenever this company shall pay any loss, the assured agrees to assign over all his rights to recover satisfaction therefor from any other person or persons, town or other corporations, or to prosecute therefor at the charge and for account of the company if requested."   On December 22nd, 1898, while this policy was in force, the property described in and insured thereby, together with a large stock of merchandise belonging to the plaintiff, was destroyed by fire, caused by the alleged wrongful conduct or negligence of the Consolidated Gas Company of Baltimore City;   The plaintiff held other policies in several companies upon his stock of merchandise, and on February 11th, 1899, instituted suit against the Consolidated Gas Company for the loss suffered by him on his merchandise and property, and on the profits of his business, by reason of the fire so caused by the negligence of the gas company.   Upon the impanelling of a jury to try the case, the parties thereto agreed that a verdict should be rendered for the plaintiff for $18,000, which was accordingly rendered, and under interrogatories duly propounded to the jury, these damages were by the express agreement of the parties, apportioned by fixing $9,000 as the loss on merchandise, and $9,000 as the loss on profits in business. The loss sustained on furniture and fixtures was, by express agreement of the parties to the suit, wholly excluded from the consideration of the jury, and from the damages

awarded by the verdict, though the same negligence and the same resulting fire caused all the damage sustained. Judgment was entered on the verdict, and this judgment was subsequently satisfied by payment in full.    There was no reservation to the plaintiff, either in the agreement or verdict, of any right of action for the loss sustained on furniture and fixtures under the policy now in question, nor any qualification as to the effect of said verdict and judgment upon any further or other liability of defendant by reason of said negligence.

On July 5th, 1899, this action was commenced.    The *narr.* is in the usual form.    The defendant pleaded, first, the general issue, and second, a special plea setting forth all the facts above recited and averring that their effect was to destroy the defendant's right of subrogation stipulated for in the policy, and to release it from liability thereon. The plaintiff demurred to this plea and the demurrer was overruled, which ruling presents the first and most important question in the case.

After the ruling on the demurrer, the plaintiff filed a replication alleging that the defendant was a party to the agreement mentioned in the plea, and that it assented to everything done in pursuance of that agreement.    The defendant in its rejoinder traversed this replication, and issue was joined thereon.    Two exceptions were taken to the rulings on the testimony which will be noticed hereafter.

At the close of the testimony, the Court, at the instance of the defendant, instructed the jury that no testimony had been offered tending to prove that the defendant was a party to the agreement or assented to the proceedings mentioned in the replication to the second plea, and that their verdict must be for defendant, to which ruling the defendant took its third exception.    The ruling upon the demurrer will be first considered, and for this purpose we are confined to the facts averred in the second plea.    These, being all issuable and well pleaded, their truth is admitted by the demurrer which denies that they constitute a good defense.

The facts thus admitted are substantially these : 1st. That the policy sued on secured to the defendant by express contract, upon payment of any loss under the policy, all the plaintiff's right to recover satisfaction therefor from any person or corporation wrongfully causing the loss.   2nd. That the loss arising on that policy and sought to be recovered by the plaintiff, was caused solely by the wrong-. ful conduct or negligence of the Consolidated Gas Company, which was the same negligence that caused, by one and the same act, the loss and damage recovered by the plaintiff from the gas company ; and 3rd. That the plaintiff, in order to secure the judgment thus obtained against the gas company, deliberately adopted a procedure by which he disabled himself from performing his agreement to assign over to the defendant his right to recover satisfaction for the loss incurred on this policy.   If these facts operated to release and discharge the defendant from liability on the policy, the demurrer was properly overruled ; otherwise not.   Whether these facts did so operate, must depend upon the applicability and effect of certain legal rules and principles which are well established.   Contracts of marine and fire insurance are essentially contracts of indemnity, and if the insured recovers the amount of his loss from any source, the insurer may recover from him *pro tanto*, and this right is called the subrogation of the insurer into the rights of the insured.   *Anson on Contracts*, 8th Eng. edition, 238 ; *Castellain* v. *Preston*, 11 Q. B. D. 380.

" The insurer is treated as a surety who is entitled to all the remedies and securities of the assured, and to stand in his place, and *use his name* in an action to recover the money which he has paid.   This right is based upon the equitable doctrine that where one has been obliged to pay money to another by the nonfeasance or misfeasance of a third, who, being at fault, ought to bear the loss, the party so paying, as by his direct obligation towards the party suffering the loss he may be compelled to do, shall be allowed,

indirectly, and through the right which the injured party had, to compel the wrong-doer to bear the burden which was imposed by his fault, although between him and the wrong-doer there is no direct relation upon which to found a cause of action    *    *    *.    The liability of the wrong-doer is in legal effect first and principal, and that of the insurer secondary, not in order of time, but in order of ultimate liability.    And where the party insured insists upon his remedy against the party secondarily liable, he is conscientiously bound to make an assignment in equity to the person entitled to the benefit, and the acceptance of the indemnity from the insurer is in the nature of an equitable assignment, which authorizes the insurer to sue in the name of the insured for his own benefit, and this is a right which a Court of Equity will support by restraining and prohibiting the insured from defeating it by a release." _May on Insurance_, sec. 454.

We have reproduced the above passage from a distinguished text-writer because it condenses and states with great clearness the fundamental principles upon which the decision of this case must turn, and which have been repeatedly applied by the Courts in insurance cases.    Thus in _Hall_ v. _Railroad Co._ 13 Wall, 370, it is said : " Standing thus, as the insurer practically does, in the position of surety, whenever he has indemnified the owner he is entitled to all the means of indemnity which the satisfied owner had against the party primarily liable."    In the case of _The Sidney_, 23 Fed. Rep. 88, the Court said : " In such cases, the insurer on payment is held to be equitably entitled to stand in the shoes of the assured and to recover such indemnity as the assured was entitled to recover against other persons having no right to the benefit of the insurance." Both branches of the passage cited from _May_ (_supra_), are well and strongly stated in _Dilling_ v. _Draemel_, 16 Daly, 105, where the Court says : " It is well settled that if a loss under a policy of insurance is occasioned by the wrongful act of a third party, the insurer occupies the position of a

mere surety and the wrong-doer that of a principal debtor; and *all the incidents* of suretyship attach to the position of the underwriter in such a case, including the right of subrogation. *The same principle is applicable to a contract of insurance, if the assured destroys the remedy of subrogation, and relieves the assurer to the full extent to which the wrong-doer could have been made liable for the loss.*" In the case last cited, the plaintiff's goods, insured against loss through collapse of building, were injured by the fall of part of the building in consequence of his landlord's excavating on an adjoining lot, and he brought an action therefor against the landlord, which was settled on payment of a certain sum, and a release under seal was given against all claims or demands whatsoever; and it was held that such release barred a subsequent action by plaintiff on his insurance policy to recover any part of such loss, as it destroyed the right of subrogation of the company, the Court saying, " If the assured by his own act absolutely and without reservation releases the wrong-doer, he thereby discharges the insurer to the full extent to which he has defeated the insurer's remedy over by right of subrogation."

In *Carstairs* v. *Mechanics Ins. Co.,* 18 Fed. Rep. 473, plaintiffs sued the insurance company to recover the value of goods lost in transit from Peoria to Philadelphia, by a collision which was within the risk of the policy which, as in the case before us, stipulated that the insurance company, in case of loss, should be subrogated to all claims against any carrier of the goods. The bill of lading under which the plaintiffs claimed the goods, provided that in case of loss imposing liability on the carrier, the carrier should have the full benefit of any insurance effected on the goods, and the Court said: " The Insurance Company being practically in the position of surety, and having a right to the subrogation, and the plaintiff having by the terms of the bill of lading, under which they claim the goods, defeated that right they cannot be allowed to recover in this action." Other examples of the care with which the Courts apply

the rule stated, may be found in *Niagara Ins. Co.* v. *Fidelity Fire Ins. Co.*, 123 Pa. St. 523; *Atlantic Ins. Co.* v. *Storrow*, 5 Paige, 295; *Omaha & R. V. Ry. Co.* v. *Granite State Ins. Co.*, 53 Neb. 514 (73 N. W. Rep. 951), and *Sims* v. *Mutual Fire Ins. Co.*, 101 Wis. 586 (77 N. W. Rep. 908), but it is not necessary to do more than refer to them.

It yet remains for us to determine whether the proceedings resulting in the judgment against the gas company released the wrong-doer and destroyed the defendant's right of subrogation.

Now there was in this case but one tortious or negligent act of the gas company resulting in one fire which occasioned at one and the same time, as well the loss incurred under this policy, as the loss incurred under the other policies for which recovery was had against the gas company. This is admitted by the demurrer, as well as the further facts that that suit was for the whole loss occasioned by the fire ; that there was no reservation of any right by the plaintiff for the protection of this defendant, and no agreement qualifying the effect of the verdict, and that by the direction of the plaintiff the recovery did not include any compensation for loss incurred under this policy, and the defendant has no interest in the recovery, as to the policy with which we are now concerned. For a single indivisible tort but one suit can be brought. The plaintiff in this case could not now bring another suit against the gas company for his own benefit to recover the loss incurred under this policy, nor could such suit be brought in his name for the benefit of the defendant. As was said in *Platt* v. *Richmond & York River R. R. Co.*, 108 N. Y. 364, "The right of subrogation is derivative, and comes solely from the assured, and can only be enforced in his right. If the assured has no right which he can transfer to the insurer, then the insurer can have no subrogation and, cannot take the place of the assured for the purpose of enforcing the liability of the wrong-doer for the loss." And in *Aetna Ins. Co.* v. *Hannibal R. R. Co.*, 3 Dillon, 1, it is

·said : ·'The suit, though for the use of the insurer, must be in the name of the person whose property was destroyed. The wrong was single and indivisible and gives rise to one liability.  If one insurer could sue, then if there are a dozen, each may sue, and if the aggregate amount of the policies falls short of the actual loss, the owner could sue for the balance.  This is not permitted, and so it was held one hundred years ago in a case whose authority has been recognized ever since, both in Great Britain and in this country, *i. c.*, *Assurance Co.* v. *Sainsbury*, 3 Douglas, 245."

The plaintiff had one indivisible cause of action against the gas company and that cause of action has been merged in the judgment he obtained.  When he excluded from that judgment so much of that cause of action as relates to this policy he as effectually released so much of his right of action as if he had executed and delivered a release under seal therefor, and as clearly and unequivocally destroyed the defendant's right of subrogation, as he would have destroyed it by such release.  Any act which makes performance of the agreement to assign either impossible or useless must relieve the insurance company from its concurrent obligation to pay.  The plaintiff in the present case, in order to protect his larger interests under the other policies, and his interest in recovery for loss of profits which were uninsured, has seen fit, for reasons doubtless satisfactory to him, to sacrifice his own and defendant's interest under the policy in question, and cannot now be heard to complain of the result of his own course of conduct.  In *Commercial Union Assurance* v. *Lister*, L. R. 9 Ch. App. 483, the owner of a building insured it against fire, and it being burned by negligence of a municipal corporation, he brought an action for damages against the corporation. The insurance company attempted to restrain a proposed compromise, and it was held that the owner was *dominus litis*, and would be allowed to conduct the suit without interference by the insurers, but would be liable for any thing done by him in prejudice of their right of subrogation.

And in *Dunham* v. *N. E. Mutual Ins. Co.*, 1 Lowell's Dist. Rep. 253, it was said : " If the assured fraudulently attempts to release a wrong-doer he must still give credit for all he *might have recovered*, and *wilfully negligent conduct* by which the underwriter had lost his remedy, *might discharge* the underwriter, as fraud certainly will."

It was argued for the appellant that as the policy only provides for an assignment of the right of the insured, upon payment of the loss, that the plea should have averred payment or tender of payment as a condition precedent to subrogation, and not having done so, was defective, and the demurrer should have been sustained. It is true that mere equitable subrogation cannot be demanded, without full payment, as has been frequently held in this State ; (*Parrott* v. *Chestertown Nat. Bank*, 88 Md. 516, and cases there cited) ; and it is equally true that where there is, as here, an express contract for subrogation upon payment of the loss, the form of the contract imposes the same condition precedent. If, therefore, the right of subrogation in this case had not been destroyed by the act of the insured, we should be obliged to give effect to this rule, and sustain the demurrer because in neither aspect of the case could the insurer demand substitution in advance. A demand made by a surety for subrogation before he has discharged the liability, out of which it grows, is without anything to support it, and the creditor may properly refuse it without affecting thereby his right of action against the surety. *Ins. Co. of N. A.* v. *Fidelity Ins. Co.*, 123 Pa. St. 525. But the converse of this proposition is necessarily equally true, and where the creditor before suit brought by him against the insurer, or at the time of filing plea therein, has by a release of all right of action against the wrong-doer, destroyed the insurer's right of subrogation, he has also destroyed his own right of action against the insurer. In such a case, to require the insurer's plea to aver payment, or tender, in order to entitle him to an empty assignment of an extinguished right, would be a refinement in pleading which the law does not require or sanction.

We are, therefore, of the opinion that the demurrer was properly overruled.   This brings us to the ruling on defendant's prayer.

The plaintiff's replication to the second plea was not a traverse but a plea of confession and avoidance, alleging that the defendant was a party to the agreement set up in the plea, and admitted, or not denied, by the replication. The defendant traversed this replication, and the issue which was joined thereon was "that the defendant was a party to the agreements set up in the plea" resulting in the release of the right of action.   Upon this issue the plaintiff had the affirmative, and consequently, the burden of proof. *Stephen on Pleading*, sec. 94.   The only witnesses who testified in the case so far as the record discloses were the plaintiff and his two attorneys in the suit against the gas company, Messrs. Whitelock and Colton.   Mr. Deming the defendant's adjuster, was not sworn in the case.   The plaintiff apparently knew nothing about the agreements beyond the amount proposed as the basis of compromise, $18,000, and its equal division between himself and the insurance companies.   In his first examination he was not interrogated at all on the subject.   He was subsequently recalled and testified in regard to the preliminary conference the night before the agreements were made, but gave no details, all that he could say was that, so far as he could judge, the adjusters, upon the part of the insurance companies, acquiesced in acceptance of the settlement of $18,000, to be equally divided, as stated, and he expressly stated that he could not recall any reference to the policy now in question.   Mr. Whitelock testified that he never saw any officer of the defendant in reference to the matter, and never had any conference with any one representing it, except Mr. Deming.   There is no contention that Deming bore any other relation to the defendant than that of adjuster, and no authority is required to show that an adjuster has no power to consent to the extinguishment of the insurer's right of subrogation, and that if he had attempted to give such con-

sent, it would not have bound the defendant without proof, other than his own statement or admission, of general agency or special authority for the purpose.    But it is plain from the testimony of Mr. Whitelock that he did not attempt to give consent, and that when requested prior to the consummation of the agreements to sign a memorandum of instructions for the purpose, he declined, saying he had no such authority, though he said he had no doubt it would meet with approval.    Mr. Colton's testimony adds nothing to that of Mr. Whitelock.    Taken most strongly for the plaintiff, it only shows that "as an adjuster, as an insurance man" Mr. Deming thought the settlement "a good one." There is not a particle of evidence to show that his attention was called to the fact that this settlement would in any manner affect the defendant's rights under this policy.    It is, we think, perfectly plain that he never attempted to bind the defendant, when he expressly disclaimed authority to do so, and his expressed confidence that the agreements would be approved have not been justified by a word of evidence in this case to show such approval.    Mr. Whitelock as attorney had no power to bind the company by a compromise (*Maddux* v. *Bevan*, 39 Md. 485,) and very properly declined to attempt to do so, as shown by his testimony. We therefore think defendant's prayer was properly granted. We have not perceived any error in the exclusion of the evidence set forth in the first and second bills of exception, but inasmuch as the conclusions we have reached require the affirmance of the judgment it is unnecessary to review them.

For the reasons given the judgment will be affirmed.

*Judgment affirmed with costs to the appellee above and below.*

(Decided June 16th, 1900.)