JOHN B. HILLEY v. BLUE RIDGE INSURANCE COMPANY, A CORPORATION.

(Filed 7 May, 1952.)

1. Contracts § 8: Insurance § 13a—

Where the agreements of the parties are in writing and are clear and unambiguous, the legal effect of the writings is a question of law for the court and not for the jury.

2. Insurance §§ 43½, 44d—Breach of subrogation agreement by insured held to preclude recovery on collision policy.

Insured's car was struck by a locomotive at a grade crossing. The policy of collision insurance in suit provided that upon payment of loss, insurer should be subrogated to the rights of insured against any third party, and that insured should do nothing after loss to prejudice such rights. Before payment of loss by insurer, insured paid the railroad company for damage to the engine and executed a release of any rights insured might have had against the railroad company. *Held:* The breach of the subrogation provisions of the policy, established by unambiguous writings, precludes insured from maintaining an action against insurer for the loss, and insurer's motion to nonsuit should have been allowed.

APPEAL by defendant from *Godwin, Special Judge,* at October Civil Term, 1951, of GASTON.

Civil action to recover on policy of automobile insurance against loss by collision.

Plaintiff alleges in his complaint, substantially, these facts:

1. That on 20 October, 1949, and in consideration of certain premium paid it, defendant, Blue Ridge Insurance Company, a corporation, issued to him, the plaintiff, John B. Hilley, of Gastonia, North Carolina, a certain policy of insurance, in which it insured him against any loss or damage to his 1949 model tudor Mercury automobile, motor number 9CM-264860, caused by collision of it with another object, to the amount of actual cash value in excess of $75.00—occurring during the period from 14 October, 1949, to 14 July, 1951.

2. That on 21 January, 1951, about 7 o'clock p.m., plaintiff delivered his said automobile into the custody of one Tillman Yearwood, with express permission to operate it, and that about 10:30 p.m., as Yearwood "was attempting to cross the Southern Railroad main track in the town of Lowell, North Carolina, a fast train ran into and completely demolished" the automobile,—by reason of which plaintiff sustained loss in certain amount.

3. That plaintiff gave to defendant due notice of the collision, and, on 23 March, 1951, defendant denied liability, and this action is commenced within twelve months of the date of loss and damage to plaintiff as stated.

Defendant, answering, admitted (1) the issuance of the policy of insurance subject to all the terms and conditions therein contained, (2) that

same was in effect on the date alleged, 21 January, 1951, and (3) that plaintiff gave notice of the collision, and filed proof of loss and commenced this action within twelve months from the date of the loss, but denied all other allegations of the complaint; expressly denying that damage to plaintiff's automobile was caused by accidental means.

And for a further answer and defense, defendant avers:

"1. That the contract of insurance between plaintiff and defendant contained the following provisions: 'In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.'

"2. That on January 24, 1951 the plaintiff admitted to the Southern Railroad Company his liability for the damage done its engine in the collision with the plaintiff's car, and paid to said company the sum of $157.50. And on said date the plaintiff executed to the Southern Railroad Company a full release of any claim he had against said company for damages to his car arising out of the collision between his car and the railroad engine.

"3. That the admission of liability by the plaintiff, and his release of the Southern Railroad Company from any claim existing in his favor against said company for damage to his automobile, violated the terms and conditions of his insurance contract with the defendant and prejudiced and defeated this defendant's right of subrogation for any payment required to be made by it under the terms of its insurance contract with the plaintiff, and said facts are hereby pleaded in bar of any recovery by the plaintiff in this action.

"4. (Not now pertinent)."

Upon the trial in Superior Court plaintiff offered evidence relating to the circumstances leading up to and surrounding collision, and to incidents following, tending to show this narrative:

On 21 January, 1951, Tillman G. Yearwood, accompanied by plaintiff, was driving plaintiff's car in South Carolina and had a wreck,—doing some small damage to the car. After the wreck, they came home. Yearwood asked plaintiff if he could use the car, and plaintiff gave him permission. About 8:30 on night of that date, Yearwood and one Houser Dewey Darnell got together. They went down to Lowell, where, as Yearwood testified, "I was supposed to meet a person." Yearwood was driving plaintiff's car, and Darnell driving his own car. They drove across the tracks, turned the cars around and parked 25 or 50 feet from, and heading toward the tracks, and the town of Lowell. It was then about 8:30. They took a drink, and while they were sitting there parked, five

boys came by, and talked to them, about five minutes. Darnell left "at about a quarter until ten."

Yearwood testified, "Darnell left and I sat there about an hour and a half. I started rolling off in the car, and I rolled on down to the railroad. When I mashed the gas for the car to go, it wouldn't go. The motor was dead, and I looked up and saw this train to my left. I jumped out of the car just before the train hit it, and the steam blew on my clothes." And, later in his testimony Yearwood said: "I got up a little speed to pull out of the gully, and then took my foot off the gas, and the car rolled and stopped on the railroad track. I didn't put on brakes at any time. The car was free wheeling." A colored man came along "about that time," and Yearwood asked to be taken to Gastonia. There he met Darnell, who told him "to go on back down there, as they would be hunting for somebody." Yearwood testified, "I went back down, and they got me and locked me up." Darnell "put up his bond" for driving drunk. Plaintiff Hilley was told about 3:30 the next morning that his car had been destroyed at the railroad crossing.

Plaintiff, who worked for a motor line, then made a run to New York on the truck which he drove, and on his return he was stopped by a State patrolman who was accompanied by Captain Brown, of the Southern Railway Company. Captain Brown then told plaintiff that he had five affidavits from five boys who saw Houser Darnell push the car on the tracks; and that plaintiff could come over to Charlotte, if he wanted to, and see if they could get "this thing settled," since, he said, Yearwood was drunk. Plaintiff went to Charlotte that night with Darnell and Yearwood. Plaintiff testified: "When I talked to Captain Brown in Charlotte, he accused Yearwood and Darnell of placing my car on the railroad tracks. They both denied this. After I heard that accusation and heard them deny it I then paid the Southern Railway $157.50 for damage done to their engine at the time my car was destroyed. At the same time I signed a release to the Southern Railway Company, releasing them from any claim which I might have against them for damages for destroying my car." Plaintiff identified the release signed by him, and by Darnell and Yearwood, and it was read into the evidence.

The plaintiff continued: "I never did bring suit against the Southern Railway Company for tearing up my car . . . At the time I signed the release with the Southern Railway Company, I knew that I couldn't thereafter sue them for running over my car. I knew the release was the end of any claim I had or might have against Southern Railway. When I paid the $157.50 I didn't feel like it was my fault that the engine was damaged, but I paid them because of the way it was put to me, since I hadn't done any wrong at that time . . . I can be scared into anything. Nobody accused me of doing anything wrong. After I signed this release and

after I paid this money, I then made a claim on the insurance company." Plaintiff also testified, "I read that release that I signed." And plaintiff also testified: "He (referring to Captain Brown) said if I signed the release, they would drop the matter where it was."

Plaintiff also introduced in evidence the policy of insurance, "Master Policy Number N C F-1" containing provision for "Collision or Upset" coverage for "direct and accidental loss of or damage to the automobile caused by collision of the automobile with another object or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto," and showing the amount deductible to be $75.00; and also containing "Conditions of Master Policy," among which is No. 9 entitled "Subrogation" in words identical with those set out in paragraph 1 of defendant's further answer and defense as hereinabove recited.

At the conclusion of the evidence for plaintiff, defendant moved for judgment as of nonsuit. Motion was denied and defendant excepted.

These issues were thereupon submitted to and answered by the jury as shown:

"1. Did the defendant issue and deliver to the plaintiff its policy of insurance insuring the plaintiff against loss by collision to his 1949 model Mercury automobile, as alleged in the complaint? Answer: Yes.

"2. If so, was said policy of insurance in force and effect on January 21, 1951? Answer: Yes.

"3. Was the plaintiff's automobile damaged by accidental means by collision with a train of the Southern Railroad Company on January 21, 1951, as alleged in the complaint? Answer: Yes.

"4. Did the plaintiff pay to the said Railroad Company $157.50 as damage to the train and execute and deliver to the Railroad Company a release of liability for damage to his automobile resulting from said collision, as alleged in the Answer? Answer: Yes.

"5. If so, did such acts and conduct of the plaintiff constitute a breach of his contract of insurance and prejudice the subrogation rights of the insurer, as alleged in the Answer? Answer: No.

"6. What amount, if anything, is the plaintiff entitled to recover of the defendant? Answer: $1,450.00."

From judgment signed in accordance with the verdict, defendant appeals to Supreme Court, and assigns error.

*Frank P. Cooke and R. R. Friday for plaintiff, appellee.*
*Horace Kennedy for defendant, appellant.*

WINBORNE, J. The sole question presented on this appeal is based upon exception by defendant to the ruling of the trial court in overruling its motion for judgment as of nonsuit.

Defendant contends, and we hold properly so, that since the terms of the policy of insurance, and of the release given by plaintiff to Southern Railway Company are in writing, and free from ambiguity, and are in evidence, the ascertainment of their meaning and effect is for the court and not for the jury.

The terms of the condition of the policy relating to subrogation are clear, and speak for themselves. Likewise the terms of the release are clear, and speak for themselves. *Brock v. Porter,* 220 N.C. 28, 16 S.E. 2d 410. Hence the ascertainment of their meaning and effect is for the court, and not for the jury. *Young v. Jeffreys,* 20 N.C. 357; *Patton v. Lumber Co.,* 179 N.C. 103, 101 S.E. 613; *Drake v. Asheville,* 194 N.C. 6, 138 S.E. 343.

One of the conditions on which the policy of insurance here involved was issued provides that "in the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments.and papers and do whatever else is necessary to secure such rights," and that "the insured shall do nothing after loss to prejudice such rights."

This clearly and expressly gave to the insurance company right of subrogation—and obligated the insured, the plaintiff, to secure to it such right, and to do nothing after loss to prejudice such rights.

On the other hand, the terms of the release read as follows:

"I, J. B. Hilley, H. D. Darnell and T. G. Yearwood of Gastonia, North Carolina, in consideration of the payment to me/us by Southern Railway Company of the sum of One Dollar ($1.00) and other valuable considerations, the receipt of which is hereby acknowledged, hereby release and forever discharge the said Southern Railway Company from any and all claims, demands, actions, or causes of actions of any kind whatsoever which I/we have or could hereafter have on account of, arising out of, or in connection with, personal injuries and property damages at or near Lowell, North Carolina, on or about the 21st day of January, 1951. This release is fully understood by me/us and constitutes the entire agreement between the parties hereto and is executed solely for the consideration above expressed without any other representation, promise or agreement of any kind whatsoever."

Thus it appears that plaintiff has released and discharged the railway company "from any and all claims, demands, actions, or causes of actions of any kind . . . arising out of or in connection with . . . property damages" at time and place in question.

And in this connection this Court, in opinion by *Barnhill, J.,* in *Ins. Co. v. Motor Lines, Inc.,* 225 N.C. 588, 35 S.E. 2d 879, in keeping with prior decisions, declared: "When property upon which there is insurance

is damaged or destroyed by the negligent act of another, the right of action accruing to the injured party is for an indivisible wrong,—and a single wrong gives rise to a single indivisible cause of action . . . The whole claim must be adjudicated in one action . . . The cause of action abides in the insured through whom the insurer, upon payment of the insurance, must work out his rights," citing *Powell v. Water Co.*, 171 N.C. 290, 88 S.E. 426; 1 Am. Jur. 493.

And it is a well established rule that if an insured settles with or releases a wrongdoer from liability for a loss before payment of the loss has been made by the insurance company, the insurance company's right of subrogation against the wrongdoer is thereby destroyed. Appleman on Insurance Law and Practice, Vol. 6, p. 580, Sec. 4092.

Hence plaintiff, in the present action, having released the railway company from liability for the loss caused by the collision of its train and plaintiff's automobile, covered by the policy here involved, and before payment of loss by the insurance company, the insurance company's right of subrogation is destroyed. Hence, the condition as to subrogation as set forth in the policy has been breached.

The question then arises as to the effect of such breach on right of plaintiff, the insured, to maintain against the insurance company an action on the policy for loss.

While this question appears to be one of first impression in this State, we find that courts of other states, in well reasoned opinions, have passed upon the question, and that text writers have treated the subject. The purport of these is that where the insured releases his right of action against the wrongdoer before settlement with the insurer, that release destroys, by operation of law, his right of action on the policy. *Farmer v. Union Ins. Co.*, 146 Miss. 600, 111 So. 584; *Packham v. Fire Ins. Co.*, 91 Md. 515, 46 Atl. 1066; 50 L.R.A. 828, 80 Am. St. Rep. 461; *Auto Owners' Protective Exchange v. Edwards*, 82 Ind. App. 558, 136 N.E. 577; *Maryland Motor Car Ins. Co. v. Haggard* (Court of Civil Appeals of Texas), 168 S.W. 1011; *Superior Lloyd's of America v. Loan Co.* (1941) (Texas), 153 S.W. 2d 973; *Remedial System v. Ins. Co.*, 227 Ky. 652, 13 S.W. 2d 1005; *Brown v. Fire Ins. Co.*, 83 Vt. 161, 74 A. 1061, 29 L.R.A. N.S. 698; Couch's Enc. of Insurance Law, Vol. 8, Sec. 2003, p. 6610; Appleman on Insurance Law and Practice, Vol. 6, Chap. 176, Sec. 4093, p. 587, and cases there cited; 29 Am. Jur., Insurance, Sec. 1344; Ann. 26 A.L.R. 429, at 432; Ann. 54 A.L.R. 1454, at 1456.

Hence we hold in the present action that, having released the railway company, before defendant, the insurance company, had paid the loss, and thereby destroyed the insurance company's right of subrogation, the plaintiff destroyed his right to maintain an action against the insurance company on the policy for the loss in question.

Therefore, motion of defendant for judgment as of nonsuit should have been sustained.

Reversed.