Jerry **MAIATICO**, Appellant,

v.

**HOT SHOPPES, INC.**, Appellee.

No. 15776.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 22, 1960.

Decided Feb. 23, 1961.

Petition for Rehearing En Banc Denied March 21, 1961.

Mr. Burton R. Thorman, Washington, D. C., for appellant.

Mr. Jo V. Morgan, Jr., Washington, D. C., with whom Messrs. Roger J. Whiteford and Frank J. Martell, Washington, D. C., were on the brief, for appellee.

Before FAHY, DANAHER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

This appeal involves the meaning of a provision of a commercial lease between appellant as landlord and appellee as tenant, although it arises in the context of the landlord's suit against the tenant for damages resulting from the tenant's negligence. For convenience the parties will be described as landlord and tenant.

The landlord leased a portion of a building to the tenant for restaurant pur-poses. The lease provided that the landlord would contribute to the purchase of the restaurant fixtures and equipment on terms not important here. It was "agreed that Landlord assumes no liability or responsibility whatever in respect to the conduct and operation of the business to be conducted * * *." The tenant agreed to carry fire insurance covering the restaurant fixtures and furnishings.

Paragraph 12 states that if the building, of which the restaurant space was a part, is "partially damaged by fire * * * the damages will promptly be repaired by and at the expense of the Landlord * * *." If the entire building were rendered wholly untenantable so that the tenant could not carry on his business as before and the landlord did not repair the damage within 60 days either party could cancel the lease.

On December 4, 1956, a fire originated in the restaurant. The landlord's complaint herein alleged that damage to the leased premises and to other parts of the building was caused by tenant's negligence and in the present posture of the case that must be accepted as true. The District Court held that the provision of paragraph 12 of the lease barred recovery by the landlord; hence the court did not reach the question of negligence.

It is axiomatic that no contract or lease was necessary to make the tenant liable to the landlord for his negligence. The tenant's responsibility for damages caused by his negligent use of the premises arises not from the terms of the contract but by operation of law whether he be tenant, licensee, trespasser or otherwise on the premises. See General Mills, Inc. v. Goldman, etc., 8 Cir., 1950, 184 F.2d 359, 370 (Sanborn, J., dissenting), certiorari denied 1951, 340 U.S. 947, 71 S.Ct. 532, 95 L.Ed. 683.

At one time, as we know, the law did not permit a person to exculpate himself by contract from the legal consequences of his negligence. E. g., Brown v. Postal Tel. Cable Co., 1892, 111 N.C. 187, 16 S.E. 179, 17 L.R.A. 648. Al-

though the modern law allows such exculpation in most circumstances,[1] it is well established that exculpation must be spelled out with such clarity that the intent to negate the usual consequences of tortious conduct is made plain. Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co., 7 Cir., 195 F.2d 467, certiorari denied 1952, 344 U.S. 832, 73 S.Ct. 39, 97 L.Ed. 648; Fairfax Gas & Supply Co. v. Hadary, 4 Cir., 1945, 151 F.2d 939, 940; Galante v. Hathaway Bakeries, Inc., 1958, 6 A.D.2d 142, 176 N.Y.S.2d 87.

■ Can paragraph 12 be read as waiving or contracting away the landlord's right to hold the tenant for his alleged negligence in these circumstances? At the outset we must recognize that the provision in question, which is commonly found in most commercial leases, has a very limited but highly important practical function. The landlord obligates himself to renovate the damaged premises promptly so that the purpose of the lease can be fulfilled. When the premises are damaged so that the tenant temporarily cannot use the premises as intended, good business judgment dictates that the restoration be accomplished without waiting for payment of insurance claims, determination of liability, or other factors. That is the function and purpose of the provision in question.

Here the tenant leased one unit of a multiple unit commercial building. The landlord is plainly the logical party to restore the property, for after all, it is his building. Restoration might well involve repairs on a dozen or more units occupied by as many separate tenants. The provision in question does no more than declare that the landlord is the one to take all steps to repair the building as he wishes, with contractors of his selection, and in whatever manner and style he elects. Of course, if the fire occurred without fault attributable to any-

one, the landlord must not only assume the immediate burden of repairs but is also unable to recoup for the damage. When the lease as a whole is read against this background, it becomes plain why there is no mention of "negligence," "tort," or "release from liability" in the paragraph we are concerned with. The parties were not contracting with respect to any subject except the matter of who was to take the steps necessary to render the leased premises usable.

In the recent case of Galante v. Hathaway Bakeries, Inc., 1958, 6 A.D.2d 142, 176 N.Y.S.2d 87, 90, the tenant argued that a covenant to return the premises in good order except for damages caused by fire exempted the lessee from liability for fire damage caused by its negligence. The court said:

> "The parties to the agreement assumed certain contract obligations. *Apart from these each party was subjected to certain tort liabilities.* If there was fire damage or destruction to the premises it was agreed that the tenant was not required to repair. The tenant, however, was charged with legal knowledge that if it intended to exempt itself from its own acts of negligence *clear and unequivocal language to that effect was required.* In the absence thereof, defendant was only released from its *contract* obligation to repair in the event of an unavoidable fire. *Its tort liability for a fire caused by negligence remained. It may not convert the plain language of the lease into an exemption clause protecting itself from tort liability.*" 176 N.Y.S.2d at page 95 (Emphasis added.)

Accord, Sears, Roebuck & Co. v. Poling, 1957, 248 Iowa 582, 81 N.W.2d 462. In short, the law requires that any alteration of the "familiar rules visiting liability upon a tortfeasor for the consequences of his negligence"[2] must be

---

1. But see Kay v. Cain, 1946, 81 U.S.App. D.C. 24, 154 F.2d 305.

2. Boston Metals Co. v. The Winding Gulf, 1955, 349 U.S. 122, 123–124, 75 S.Ct. 649, 650, 99 L.Ed. 933 (Frankfurter J., concurring).

clearly and unambiguously expressed. No particular form or words are needed but the intent to waive negligence must be clear. It should be noted that the insurer is similarly entitled to know that negligence is waived since this obviously affects the underwriter's calculation of rates.

The tenant argues that the provisions of the lease suggest that the landlord is to carry the fire insurance on the building, recovering an appropriate share of the premium cost from each tenant. We need not decide whether this was intended, although we note that no specific provision so states. As a practical matter, it is always more likely that the landlord will carry the insurance on a building of this type. Where the leased property is an entire building leased by a single tenant the lease might well require that the tenant carry the insurance—in which case he is fully protected whether he be negligent or not. But where the tenant is but one of numerous tenants of a large building, the problem of insurance cannot feasibly be handled by having each tenant carry separate fire insurance on his part of the building. Nothing requires either the landlord or tenant to insure unless he contracts to do so. He can, if he is foolish or rich, self-insure. Who carries the insurance, or whether it is carried at all, cannot determine the liability of the tenant for his own acts of negligence. Wichita City Lines, Inc. v. Puckett, 1956, 156 Tex. 456, 295 S.W. 2d 894, 898–899. But see Cerny-Pickas & Co. v. C. R. Jahn Co., 1956, 7 Ill.2d 393, 131 N.E.2d 100.

The undesirability of allowing the matter of insurance to govern is strikingly demonstrated by the situation which might arise where the insurer is not given notice of the release of the tenant from liability. For all that the record shows, that may be the situation here. Since an insured destroys his cause of action on the policy by releasing the tortfeasor *after* the event, Hilley v. Blue Ridge Ins. Co., 1952 235 N.C. 544, 70 S.E.2d 570, 38 A.L.R.2d 1090; Conard v. Moreland, 1941, 230 Iowa 520, 298 N.W. 628, it might well be argued that by releasing the tenant in advance the landlord destroys his action on the policy against the insurer who lacked notice. Thus, the landlord would stand the loss and all theories of "distribution of risk" would be unavailing.

In the absence of a clear and unambiguous provision exempting the tenant for his negligence, we cannot construe the lease as a waiver of the landlord's claim for the tenant's negligence. Since the District Court did not reach the issue of negligence, the judgment of the District Court is reversed and the case is

Remanded for further proceedings not inconsistent with this opinion.

FAHY, Circuit Judge, (dissenting).

Plaintiff-appellant, the landlord, and defendant-appellee, the tenant, entered into a detailed business arrangement which they incorporated in a lease. Plaintiff leased to defendant a substantial business property consisting of a portion of the basement and first floor of a building under construction in the District of Columbia. The tenant in due course took possession under the lease and conducted on the premises, as it was specified the tenant should do, a soda bar, lounge, cafeteria, and retail food store.

The obligations of the landlord and tenant toward each other were set forth in detail in the lease, covering the subjects of completing, furnishing, equipping and decorating, the division of costs of doing so, the rental and method of its calculation, the exclusive right of the tenant to engage in certain types of business in the building, the keeping of records of income, the furnishing of heat, air-conditioning and hot and cold water, the question of responsibility for any failure to furnish said services due to breakdowns or to circumstances beyond the landlord's control, the payment for utilities, the painting of the exterior, the title to equipment and furnishings,

maintenance and repair of furnishings, working equipment, fixed equipment, changes in interior, decorations, exterior repairs and replacements, the carrying of liability insurance by the tenant insuring the landlord and tenant against claims for personal injury in or about the premises, and so forth. The lease also provides:

"Tenant will carry its own fire insurance on the fixtures, equipment and furnishings."

This, of course, left it to the landlord to carry fire insurance on his building. Then come these provisions:

"12. If the building, of which the leased premises form a part, shall be partially damaged by fire or other cause, the damages will promptly be repaired by and at the expense of the Landlord, provided that the Landlord shall not be liable for any damages due to reasonable delay on account of labor disputes or any other cause beyond Landlord's control. * * *

"13. Tenant shall not keep in the leased premises gasoline or any other explosive or highly inflammable material which will increase the amount of fire insurance beyond the ordinary risk. The Landlord shall have access to the leased premises at any and all reasonable times for the purpose of protecting the same against fire, for the prevention of damage and injury to the premises, or for the purpose of inspecting the same. Tenant agrees to comply with all reasonable rules and regulations established for the building of which the leased premises form a part * * * ."

A fire occurred, which partially damaged the building. As to the manner of its occurrence the District Court found that

"[A] female employee of the defendant in performance of her duties left a pot of butterscotch pudding cooking unattended on a stove in the basement of the kitchen portion of the premises demised to defendant. While she was away from the stove, a fire occurred in or spread into a filter at an exhaust duct opening directly above the stove she had been using. This fire then spread into the exhaust duct igniting the grease residues accumulated therein."

The court also found:

"Promptly after the fire, plaintiff [landlord] repaired the damage and the defendant [tenant] continued to use and occupy the portion of the premises leased to it."

More than four years have elapsed since the expense of repair was paid by the landlord, as he agreed to do. We have the matter because the landlord sued the tenant to recover this expense on the theory that the fire was caused by the negligence of the tenant, contending that if he is able to prove negligence, then the expense that he, the landlord, agreed with the tenant to pay must be paid by the tenant. The District Court held against this contention and I think rightly so.

The fire was obviously the sort the parties must have considered might occur in the conduct of a restaurant. They agreed as to what should be done in case it did occur. They agreed that partial damage to the building, not to the furnishings and equipment, by a fire or indeed by "other cause," would be promptly repaired "by and at the expense of the landlord." There was no qualification having to do with ability to prove later that such a fire was due to the tenant's negligence, such as the leaving of a "butterscotch pudding cooking unattended on a stove in the basement." A qualification was stated, and it was only that the landlord "shall not be liable for any damages due to reasonable delay on account of labor disputes or any other cause beyond Landlord's control."

The landlord had the contractual right of inspection to safeguard against a fire, and the tenant also assumed contractual

obligations to that end. No breach of these obligations is the basis of the landlord's effort to recover the cost of repair.

In none of the cases relied upon by the majority was there a provision comparable to the provision in the lease before us imposing responsibility upon the landlord. The case of Boston Metals Co. v. The Winding Gulf, 349 U.S. 122, 75 S.Ct. 649, 99 L.Ed. 933, involved a question of tort liability, not as between the parties to an agreement on the subject, but as between one party to an agreement and an injured party who was not a party to the agreement. The case is not similar to ours.

The majority correctly points out that no contract or lease was necessary to make the tenant liable to the landlord for his negligence. This is true. But this is not the problem. Our question is what the landlord and the tenant had agreed upon in the event of a fire which partially damaged the landlord's building. The landlord agreed to repair the damage at his expense. The fact that he agreed to do this promptly does not mean that he was not to do it at his expense.

The agreement is construed by the majority to mean that the landlord will not bear the expense he agreed with the tenant to bear if he can later prove in a lawsuit over the cause of the fire that it was caused by the negligence of the tenant or his employees. No such qualification was made by the parties in their comprehensive arrangements regarding their obligations to one another. The expense of repair was divided according to where the damage occurred, not according to the ability in protracted litigation to obtain a judicial decision as to its cause. I read no law to require that the agreement not be given effect. Were there no agreement of course the law alone would supply the basis for liability as between the parties; here the law of contracts applies, and it should follow the contract of the parties.

I would affirm the judgment of the District Court.